## THIEL v. SOUTHERN PAC. CO.

No. 10681.

Circuit Court of Appeals, Ninth Circuit.

May 15, 1945.

Rehearing Denied June 8, 1945.

Allen Spivock, of San Francisco, Cal., for appellant.

Arthur B. Dunne and Dunne & Dunne, all of San Francisco, Cal., for appellee.

Before MATHEWS, STEPHENS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

Appellee, Southern Pacific Company, a Kentucky corporation, was at all pertinent times a common carrier engaged in the business of operating railroads and railroad trains and transporting freight and passengers for hire. Two places between which appellee operated trains and transported passengers were Reno, Nevada, and San Francisco, California. One of the trains operated by appellee between Reno and San Francisco was train No. 9.

On February 25, 1940, appellant, Gilbert E. Thiel, a citizen of California, was a passenger on appellee's train No. 9, having boarded it at Reno to go to San Francisco. Appellant seated himself by a window in one of the day coaches—the one called the smoker. The train left Reno at 8:50 P. M. Twenty-five minutes later, at a point in Nevada between Verdi, Nevada, and Truckee, California, while the train was traveling at a speed of about 35 miles an hour, appellant opened the window, leaped out, fell to the ground and was injured.

The train was stopped and was backed to the place where appellant had fallen. Appellant was put on a stretcher and put aboard the train—in the baggage car. The train then proceeded to Truckee. There appellant was removed from the train and was treated by appellee's district surgeon, Dr. J. H. Bernard, after which, on February 25, 1940, he was taken in an ambulance to a hospital in Reno, where he remained under treatment for several months.

On December 30, 1940, appellant brought an action against appellee for damages in the sum of $250,000 for the injuries resulting from his leap from the train. The complaint, in substance and effect, alleged that appellant was "out of his normal mind" on February 25, 1940; that, before accepting appellant as a passenger, appellee was informed that he was "out of his normal mind" and therefore should not be accepted as a passenger or else should be guarded; that appellee nevertheless accepted appellant as a passenger, left him unguarded and, when he leaped, failed to stop the train before he fell to the ground; and that appellee's said conduct constituted negligence and caused appellant's injuries.

The action was brought in the Superior Court of the State of California in and for the City and County of San Francisco, but, on petition of appellee, was removed

from that court to the District Court of the United States for the Northern District of California. There, on February 24, 1941, appellee answered. The answer, in substance and effect, denied that appellant was "out of his normal mind" on February 25, 1940; denied that appellee was informed that appellant was "out of his normal mind" and therefore should not be accepted as a passenger or else should be guarded; denied that appellee was guilty of any negligence; alleged that appellant's injuries were caused by his own negligence; and, as a separate defense, alleged that his injuries were contributed to by his own negligence.

On March 5, 1941, appellant filed in the District Court a written demand for a jury trial. Two months later he moved the District Court to remand the action to the Superior Court. The motion was denied. Thereafter, disregarding the removal and the refusal to remand, appellant attempted to prosecute the action in the Superior Court. Appellee thereupon applied for and, after a hearing, obtained from the District Court a judgment enjoining such prosecution. That judgment was affirmed by us on March 20, 1942.[1] Certiorari to review our decision was denied on June 1, 1942.[2]

On October 12, 1942, the action was assigned for trial on November 24, 1942. Prior to November 5, 1942, a panel of prospective jurors was drawn—the panel from which a trial jury was to be and was thereafter empaneled. On November 5, 1942, appellant challenged the array—the panel of prospective jurors drawn as aforesaid.[3] The challenge was overruled.

On November 19, 1942, appellant amended his complaint by adding thereto paragraph VIIa, which, in substance and effect, alleged that appellee was negligent in failing to give appellant first aid treatment before taking him to Truckee and in failing to give him proper medical attention at Truckee, and that said negligence aggravated appellant's injuries. These allegations were denied by appellee.

On November 21, 1942, appellant moved the court to strike his demand for a jury trial. The motion was denied. Trial of the action was commenced on November 24, 1942. After a jury was empaneled and sworn, appellant challenged the twelve jurors comprising it.[4] The challenge was overruled and the trial proceeded. At the close of all the evidence, appellant moved the court for a directed verdict in his favor. The motion was denied. The jury returned a verdict for appellee. Appellant moved for a new trial and, in connection therewith, moved for leave to take depositions. Both motions were denied, and judgment was entered for appellee. From that judgment this appeal is prosecuted.

Appellant specifies as error the overruling of his challenge to the array—the panel of prospective jurors drawn as aforesaid. The challenge was based on eight stated grounds. Ground 1 was that the judges of the District Court "failed to prescribe any rules of qualifications or otherwise for the selection of said jury panel." The judges were not required to prescribe such rules.

Ground 2 was that "mostly business executives or those having the employer's viewpoint [were] purposely selected on said panel." Actually, no one was "selected on said panel," purposely or otherwise. The panel was not selected, but was drawn, as required by § 276 of the Judicial Code, 28 U.S.C.A. § 412, from a box containing the names of not less than 300 persons possessing the qualifications prescribed in § 275 of the Judicial Code, 28 U.S.C.A. § 411, which names had been placed in the box by the clerk of the District Court, or a duly qualified deputy clerk, and a duly appointed jury commissioner. There was no evidence that the persons whose names were in the box, or the persons whose names were drawn therefrom and who thus became members of the panel, were "mostly business executives or those having the employer's viewpoint."

Ground 3 was that "a larger proportion of men jurors [were] purposely selected, thus discriminating against women jurors." Actually, neither men nor women were selected as members of the panel; for, as said before, the panel was not selected, but was drawn from a box containing the names of not less than 300 persons. There was no evidence that women were discriminated against in placing

---

[1] 9 Cir., 126 F.2d 710.

[2] 316 U.S. 698, 62 S.Ct. 1295, 86 L. Ed. 1767.

[3] Appellant called this challenge a motion to strike out the panel.

[4] Appellant called this challenge a motion to strike out the twelve jurors.

names in the box or in drawing names therefrom. Many of the persons whose names were in the box, and many of the persons whose names were drawn therefrom and who thus became members of the panel, were women. The fact, if it be a fact, that a majority were men is immaterial.

Ground 4 was that "no examination whatever [was] made of said jurors before they [were] put on said panel to ascertain their qualifications or particularly their unfitness by reason of business or other connections with or prejudice in favor of such gigantic corporations as [appellee]." No such examination was required.

Ground 5 [5] was that the judges of the District Court "failed to provide the necessary facilities or funds to permit proper investigation of prospective jurors." The judges were not required to provide such facilities or funds.

Ground 6 was that "no effort [was] made to proportionately or fairly represent citizens of all races on said panel, thus systematically excluding Negroes and Chinese." Proportional representation of "citizens of all races on said panel" was not required. The box from which the panel was drawn contained the names of citizens of the Negro race and of the Chinese race. Citizens of these races were not excluded, systematically or otherwise.

Ground 7 was that "no effort [was] made to apportion jurors by districts when selecting them." No such apportionment was required.

Ground 8 was that appellee had "been able to prevail in every personal injury action against it, tried by a jury in [the District] Court," in the nine years

next preceding the date of the challenge to the array. This, if true, is immaterial.

The challenge to the array was properly overruled.

Appellant specifies as error the denial of his motion to strike his demand for a jury trial. The motion was, in effect, an attempt to withdraw the demand, which appellant could not do without appellee's consent.[6] Appellee did not consent to, but opposed, the attempted withdrawal. The motion was properly denied.

Appellant specifies as error the overruling of his challenge to the twelve trial jurors—a challenge interposed after the jury was empaneled and sworn. This challenge was based on the eight stated grounds hereinabove discussed and shown to be untenable, and on the further ground that six of the jurors [7] were "closely affiliated and connected with" appellee. There was no evidence that any of the six jurors was so affiliated or connected. This challenge was properly overruled.

Appellant specifies as error the admission of appellee's Exhibit A-5 in evidence. Exhibit A-5 was a part of a certified copy of the complaint in an action brought by appellant's wife, Billie Belle Brown Thiel, against appellant on October 9, 1940, in the Superior Court of the State of California in and for the City and County of San Francisco—the part showing paragraph VII of the complaint.[8] Paragraph VII alleged that appellant "attempted to commit suicide and jumped from the window of a moving train,[9] resulting in injury to [appellant]." Though duly served with process, appellant failed to answer, and his wife took judgment against him by default. In view of his default—his failure to answer, much less deny, the allegations of his wife's complaint—we think that paragraph VII there-

---

[5] In appellant's challenge to the array, grounds 4 and 5 were numbered 4, and grounds 6, 7 and 8 were numbered 5, 6 and 7.

[6] See Rule 38(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

[7] James A. Levensaler, Phyllis B. Goeppner, Frederick W. Knight, Frederick M. Hohweisner, Herbert N. Bright and Maurice A. Cale.

[8] The certified copy mentioned above—a copy of the entire complaint—was exhibited to the court and to appellant's

counsel, but only paragraph VII thereof was offered in evidence. However, in offering paragraph VII, appellee indicated its willingness to have the entire document put in evidence if appellant's counsel so desired. Appellant's counsel thereupon indicated that he had no such desire. Accordingly, other portions of the document were not put in evidence and are not before us.

[9] Meaning appellee's train No. 9, from which appellant leaped on February 25, 1940.

788

of (Exhibit A-5) was admissible in evidence.[10]

■ Appellant specifies as error the alleged denial of his alleged "right to explain the full circumstances of said default, including his attempt to have his wife's attorney remove the false allegation about his attempted suicide." No such explanation was offered.

Appellant specifies as error the denial of his motion for a directed verdict. The denial was proper for the following reasons:

■ There was evidence tending to show that appellant was "out of his normal mind" on February 25, 1940, as alleged in his complaint, and there was evidence tending to show the contrary. There was evidence tending to show that, before accepting appellant as a passenger, appellee was informed that he was "out of his normal mind" and therefore should not be accepted as a passenger or else should be guarded, and there was evidence tending to show the contrary. These conflicts were for the jury, not the court, to resolve.

The evidence showed that appellee accepted appellant as a passenger and left him unguarded. Whether or not this conduct of appellee constituted negligence was a question for the jury. We cannot say that it constituted negligence as a matter of law.

■ The evidence showed that, as appellant leaped through the train window, a fellow passenger (John A. Morris) and one or two others tried to stop him. They were able to, and did, take hold of his coat and held him, dangling outside the window, for an estimated period of a minute and a half, but despite their efforts, he slipped from his coat and fell to the ground. A brakeman (William A. Sherman), seeing appellant leap through the window, signalled the engineer to stop the train. The engineer did so. Appellant, however, fell to the ground before the train was stopped. As to whether the train could have been stopped before appellant fell, the evidence was conflicting. This conflict was for the jury, not the court, to resolve.

■ The evidence showed that appellee did not give appellant any first aid treatment before taking him to Truckee. Whether or not the failure to do so constituted negligence was a question for the jury. We cannot say that it constituted negligence as a matter of law.

The evidence did not show that appellee failed to give appellant proper medical attention at Truckee. Instead, the evidence showed there was no such failure.

■ Appellant specifies as error the giving of certain instructions to the jury. In the trial court, appellant did not state the grounds, if any, of his objection to the instructions. Therefore the giving of the instructions was not assignable as error.[11]

■ Appellant specifies as error the denial of his motion for a new trial and the denial of his motion to take depositions in support of his motion for a new trial. These motions were addressed to the trial court's discretion, the exercise of which, in the absence of abuse, is not reviewable. No abuse is shown.

Judgment affirmed.

---

[10] In re Estate of McCarthy, 127 Cal. App. 80, 15 P.2d 223; Bonazzi v. Fortney, 94 Vt. 263, 110 A. 439; 1 Greenleaf on Evidence, 16th Ed., § 527(a); 4 Wigmore on Evidence, 3d Ed., §§ 1066, 1072 (pp. 60, 79).

[11] See Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.