**EHRET MAGNESIA MFG. CO., Inc., v. GOTHWAITE.**

**No. 8868.**

United States Court of Appeals
District of Columbia.

Argued March 21, 1945.

Decided May 21, 1945.

Mr. John Dillon Fitzgerald, of Washington, D. C., with whom Mr. Donald M. Sullivan, of Washington, D. C., was on the brief for appellant.

Mr. Elmer W. Pratt, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

GRONER, C. J.

Appellee, whom we shall call "Gothwaite," is engaged in the business of constructing steam distribution systems and the like. A week after Pearl Harbor he entered into a written contract with the United States to furnish, in accordance with specifications provided by the United States, certain materials and to perform certain labor in connection with the construction of a high pressure steam distribution system at ·Langley Field, Virginia. Appellant, whom we shall call "Magnesia," offered to supply the necessary pipe to Gothwaite and to do certain of the work, in "accordance with plans and specifications, including addenda as prepared by the U. S. Engineers Office," and a contract evidenced by the exchange of letters resulted.

Accordingly, the pipe was furnished and installed under the provisions of Gothwaite's contract with the United States. When the installation was about complete, it was discovered when the steam was turned on that heat had melted various sections of the asphalt waterproofing covering the pipe. As a result, water entered the pipe, wetting the magnesia insulation from outlets in the manholes back a considerable distance in the trenches. Gothwaite, to remedy the damage done, was put to considerable expense. It was to recover this expense from Magnesia that the suit was brought. The case was tried to the court without a jury.

One of the items of the plans and specifications (addendum #5) required the contractor to guarantee the work to be free of maintenance for one year after completion; and the undisputed evidence is that repairs and changes to the extent of approximately $5,000 were necessary before the system was ready for operation. The trial court found that Magnesia's contract with Gothwaite constituted it a subcontractor subject to this provision of the specifications, and this we think was correct.

When a sub-contractor undertakes to do a portion of the contract work according to plans and specifications binding on the principal contractor, such plans and specifications become a part of his contract, at least to the extent that the sub-contrac-

830

tor assumes the obligation of the general contractor in relation to the particular part of the work he performs.[1]

■ The testimony unmistakably shows that the waterproofing was, for some reason, inadequate and that the insulation failed to function, and nothing appears whereby to charge these conditions to anything Gothwaite was required to do or did do. On the contrary, the trial court found, it was the duty of Magnesia properly to seal off the insulation and waterproofing where the pipe terminated inside the manholes, that it failed to do this, and that the consequent damage to the waterproofing resulted.

Undoubtedly, if Magnesia agreed to supply insulated pipe to be "permanently waterproofed" in accordance with the terms of the contract, and by the provisions of the addendum, to be free from maintenance for the period of a year, Gothwaite was entitled to rely upon these representations. And the finding of the trial court that the damage occurred as a result of Magnesia's default in these respects properly left it to bear the burden; for, obviously, it failed to furnish pipe that was "permanently waterproofed" or "absolutely dependable."

We have carefully read the testimony on the question of fault, to determine if there is evidence to sustain the finding, and while it is somewhat difficult to construct a satisfactory theory as to the precise cause of the damage, enough appears, not only to justify, but to require us to follow, the conclusions of the trial court.

Admittedly, water entered the unsealed portion of the pipes. It was at this point that much of the trouble originated, and Judge Adkins, who heard the evidence and had far better opportunity than we to envisage the situation, found that it was Magnesia's failure to discharge its duty in sealing off the pipe which caused the disintegration and the loss. We cannot say the finding is erroneous, and we accordingly affirm the judgment.

Affirmed.

[1] Guerini Stone Co. v. P. J. Carlin Const. Co., 240 U.S. 264, 277, 36 S.Ct. 300, 60 L.Ed. 636; Cummings Const. Co. v. Marbleloid Co., 3 Cir., 51 F.2d 906; General Contracting Corp. v. United States, 4 Cir., 70 F.2d 83.