**CROCKETT ENGINEERING CO. v. EHRET MAGNESIA MFG. CO.**

No. 9036.

United States Court of Appeals District of Columbia.

Argued April 1, 1946.

Decided June 17, 1946.

Mr. Arthur J. Hilland, of Washington, D. C., with whom Mr. Earl W. Shinn, of Washington, D. C., was on the brief, for appellant.

Mr. John Dillon Fitzgerald, of Washington, D. C., with whom Mr. Donald M. Sullivan, of Washington, D. C., was on the brief, for appellee.

Before GRONER, Chief Justice, and EDGERTON and PRETTYMAN, Associate Justices.

PRETTYMAN, Associate Justice.

This is an appeal from a judgment for the defendant in a civil action for breach of a contract. Appellant, Crockett Engineering Company, to which we shall refer as "Crockett", contracted with the United States to install an underground vacuum steam distribution system at the

Army War College, Washington, D. C., in accordance with plans and specifications provided by the United States. It then entered into a contract with appellee, Ehret Magnesia Manufacturing Company, to which we shall refer as "Ehret", for the supply of insulated pipe to be used in the installation. The subcontract is evidenced by a series of letters, beginning on April 21, 1942. The first letter in the record was an offer by Ehret to furnish the required pipe "in accordance with plans and specifications and as detailed in this offer." The pipe was described in detail and was to be "Delivered to the job site, actual cost of transportation via truck, allowed." The letter-offer also stated that Ehret would furnish the insulation and waterproofing for the field joints and the labor necessary to install the same. The latter provision resulted from the fact that the pipe was manufactured and delivered in 20-foot sections completely insulated except for 18 inches of bare pipe projecting at each end of the sections. These uninsulated portions were to be insulated after the sections had been placed in the trenches, welded together and the welds tested for leaks. The duty of placing the pipe in the trenches and of connecting the sections was expressly denied by Ehret in the offer of April 21, 1942. By virtue of this denial, and by the terms of the prime contract with the United States, that duty rested with Crockett.

In a letter dated May 14, 1942, Crockett accepted the offer outlined in the foregoing paragraph. These two letters established the contractual relationship between Crockett and Ehret, and defined the rights and duties of both parties. The Crockett letter and later communications modified this subcontract with respect to provisions not pertinent to a decision of this case.

The rights and duties being thus set forth, Ehret began delivery of the pipe to Crockett, which in turn began performance of its contract with the United States. At this point, and while the work was in progress, heavy rains fell in Washington and vicinity, wetting the insulating material on the pipes in the trenches and on the surrounding land. The wetting of the insulating material was a major factor in the eventual failure of the system, by reason of which the United States required Crockett to replace a substantial portion of the piping at a cost of $19,915.06. Crockett brought a civil action against Ehret for breach of contract for the sum just mentioned. The jury returned a verdict for Ehret, and Crockett brought this appeal.

The principal controversy in the case revolves around the admission of certain evidence. Ehret offered testimony to show that Crockett did nothing to protect the material from the weather. Crockett objected on the ground that the contract placed upon Ehret the duty of protecting this material. The court permitted the questions to be answered, saying the first time, "I will let this stand for the present without ruling finally on the effect of it."; the second time, "It is put in on the same condition."; and the third time, "He cannot testify as to whose duty it was. * * * Well, I overrule the objection." Before he rested his case, counsel for Crockett announced that if the court ruled that the subject was not covered by the contract he would offer testimony as to the usage or custom. The court indicated that it would so rule, and the evidence was not offered.

At the conclusion of the testimony, counsel for appellant and counsel for appellee submitted prayers to the court. The requests were discussed fully, objections were made and exceptions noted. The court granted the following prayer of Crockett's counsel: "The jury are instructed that it was the defendant's [Ehret's] duty and responsibility to protect the material and equipment furnished and installed by it from any and all damage that might result from weather conditions and that this duty and responsibility on the part of the defendant continued until its installation on the field joints was completed."

This prayer, described in the briefs as Plaintiff's Prayer No. 4, was not included verbatim in the court's charge to the jury. Counsel for Crockett made no objection to

this omission and seems to have used the prayer in his argument.[1]

In its charge to the jury, the court said, in respect to the contract liabilities of the parties: "Now, as I have said, the plaintiff was engaged in carrying out the work in accordance with the contract with the United States so that when the defendant entered into this contract with the plaintiff, the contract was not limited to the item stated in this letter, but the defendant impliedly assumed all the obligations and liabilities of the plaintiff under the principal contract, plans, and specifications insofar as the terms and provisions of the same related to the materials, equipment, and workmanship which the defendant had contracted to furnish and install. So that those particular terms and provisions of the contract of the plaintiff with the Government were also a part of the contract between the plaintiff and the defendant."

The charge in its entirety was a careful analysis of the case. In brief, the court said that if the damage resulted from defendant Ehret's failure either to see that the materials were in proper condition when installed or to install them properly, defendant was liable to plaintiff; and that if the insulation and waterproofing did not comply, in whole or in part, with the specifications and, as a result of that failure, the insulation and waterproofing were condemned, defendant Ehret was liable; but that if the damage was due to plaintiff Crockett's failure to follow the manufacturer's recommendations at to the installation, or to its laying of the pipe without regard to Ehret's progress in sealing the joints, or to anything plaintiff Crockett did in connection with sealing the joints, the verdict should be for the defendant Ehret.

Crockett now characterizes the instructions as brief and of no value in curing the erroneous impression made upon the jury by the conditionally-admitted evidence. We do not think so. The prayer which was granted and apparently used in argument, was drawn by counsel for Crockett and was certainly clear and emphatic. The charge of the court, while in different words, was definite and clear. We do not see how the jury could have mistaken the point. Moreover, we would be constrained to reach the same conclusion because of Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. That rule provides that the "court shall instruct the jury" and that "No party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."[2] Crockett's counsel raised no timely objection to the insufficiency of the charge as given, nor to the court's failure personally to instruct the jury according to the terms of his Prayer No. 4.

■ Three other contentions are urged by appellant Crockett, namely, that its motion for a directed verdict should have been granted, that its Prayer No. 7, denied by the court below, should have been granted, and that two of appellee Ehret's prayers should have been denied.

The first of these contentions is without merit, since the evidence was in conflict.[3]

■ Plaintiff's requested Prayer No. 7 would have instructed the jury that the burden was on the defendant (Ehret) to prove that the condemnation of the pipe-line by the United States was due solely and entirely to the plaintiff's (Crockett's) own negligence. In support of its request, Crockett says that the part of Ehret's answer which asserted that the damage resulted solely from Crockett's negligence, amounted to a plea of confession and avoid-

[1] The brief presented by Ehret categorically states that Crockett's counsel read this prayer to the jury and explained it at great length. This contention has not been denied by Crockett.

[2] Bercut v. Park, Benziger & Co., 9 Cir., 1945, 150 F.2d 731, 734; Thiel v. Southern Pac. Co., 9 Cir., 1945, 149 F.2d 783, 788; Lippman v. Williams, 1945, 79 U.S. App.D.C. 334, 335, 147 F.2d 150, 151; Palmer v. Miller, 8 Cir., 1944, 145 F.2d 926, 930; McDonald v. Jarka Corporation, 2 Cir., 1944, 144 F.2d 53, 54.

[3] Gunning v. Cooley, 1930, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; McWilliams v. Shepard, 1942, 75 U.S.App.D.C. 334, 127 F.2d 18.

ance, and that this was an affirmative defense which imposed a burden of proof upon defendant. This averment by Ehret was part of its answer, in fact part of a sentence, and the remainder of the answer consisted of denials of responsibility and liability and of facts averred by Crockett. We think that the charge that Crockett was responsible was part of Ehret's denials and cannot be treated as an affirmative defense which carried a burden of proof. The answer taken in its entirety, and the adjudicated cases, fail to support Crockett's position.[4] The prayer was properly denied.

 The last contention is an objection to the granting of defendant's Prayers Nos. 3 and 5. These prayers directed the jury to find for the defendant if it found that (1) the plaintiff had failed in its duty "to make the underground installation in accordance with the recommendations of the defendant," or that (2) the damage resulted because plaintiff laid the piping without due regard for the progress of the defendant in sealing the joints. These instructions may lack somewhat in specificity and may be susceptible of rather broad construction. Crockett alleges they are so broad that they necessarily misled the jury. We do not think so. In the light of the testimony they were clear enough. We cannot assume that the jury disregarded the other instructions and ignored the facts developed at the trial.[5]

Finally, the case of Ehret Magnesia Mfg. Co. v. Gothwaite,[6] designated as controlling" in Crockett's brief, must be distinguished from the case at bar. In that case, we held that the subcontractor in a contractual arrangement very similar to the one in the instant case, assumed "the obligation of the general contractor in relation to the particular part of the work he performs." [7] However, we also said: "The testimony unmistakably shows that the waterproofing was, for some reason, inadequate and that the insulation failed to function, and nothing appears whereby to charge these conditions to anything Gothwaite [the general contractor] was required to do or did do." [8]

In the case before us, the record discloses ample evidence tending to show that the damage resulted from conditions chargeable to something Crockett "was required to do or did do."

Affirmed.

---

[4] Hanna v. Stoll, 1925, 112 Ohio St. 344, 147 N.E. 339; Hardman v. Younkers, 1942, 15 Wash.2d 483, 131 P.2d 177, 151 A.L.R. 868.

[5] The jury had before it the provisions of the general contract, the subcontract, and the instructions which we have heretofore discussed.

[6] 1945, 80 U.S.App.D.C. 127, 149 F.2d 829.

[7] Id. 149 F.2d at page 830.

[8] Ibid.