DOUGLAS E. JONES *v.* CHARLES IZZO ET AL.

SUPERIOR COURT  FAIRFIELD COUNTY  FILE No. 101421

Memorandum filed February 25, 1958

*Cummings & Lockwood,* of Stamford, for the plaintiff.

*Goldstein & Peck,* of Bridgeport, for the defendants.

FitzGerald, J. The trial of the within case to a jury at Danbury occupied three days. At the conclusion of the plaintiff's case in chief, the three defendants moved that the plaintiff be nonsuited on the ground that he had not made out a prima facie case. The motion was granted as to the defendant Fred Izzo, the minor son of the other two defendants, and denied as to the latter defendants. At the conclusion of all of the evidence, the remaining defendants moved for a directed verdict in their favor. The motion was denied.

At 3:45 p.m. on January 10, following a charge that occupied one hour in delivery, the jury retired to consider their verdict. At 6 p.m. they reported a deadlock and were given the customary supplemental instructions by the court. A half hour later the jury returned with a verdict finding the issues for the plaintiff and awarding him damages of $2000 against the two remaining defendants. Hereafter, the designation "the defendants" is referable only to Dr. and Mrs. Izzo, the parents of Fred Izzo, who had been the recipient of a judgment of nonsuit at the conclusion of the plaintiff's case in chief.

In pressing their motion for a nonsuit, and later in pressing their motion for a directed verdict, the defendants invoked the case of *Wood* v. *O'Neil,* 90 Conn. 497 (1916). And in connection with their present motions following the verdict, they renew their assertion that the *Wood* case is authority for the proposition that the plaintiff in law has no case

against them. That is a case in which our Supreme Court of Errors affirmed the action of the trial judge in entering a nonsuit against the plaintiff as administrator on the estate of a young girl who sought a recovery of damages against the parents of a boy who killed his decedent with a shotgun given him by them. In the case at bar the defendants place great emphasis upon this statement of the appellate court (p. 500): "Upon an examination of all the evidence, we think the case against the parents amounted to no more than a claim that they were negligent in the eye of the law solely because they put a shotgun into the hands of a boy not quite sixteen years old; a proposition which is manifestly untenable."

It is not without some significance to note that in the forty-two years which have passed since the decision in the *Wood* case, our Supreme Court has never made reference to its holding therein in any subsequent case. On two occasions a trial court of Connecticut has made passing reference to the case in connection with interposed demurrers. See *Lubitz* v. *Wells,* 19 Conn. Sup. 322, 323 (1955); *Toohey* v. *Colonis,* 15 Conn. Sup. 299, 300 (1948). While there is a brief reference to the *Wood* case in 44 American Law Reports 1513, the introductory note to the general annotation (p. 1509) would have it appear that the holding in that case in regard to the liability of parents on the point considered is not in accord with the modern weight of authority.

The following facts were not in dispute: The plaintiff and Fred Izzo were both sixteen years of age in December of 1955 and were classmates in school. A day or two before December 10, 1955, Fred telephoned the plaintiff and invited him to come over to his home on Saturday (December 10) to assist in the cutting up of logs in a nearby lot

owned by his parents, the defendants, and stated that they would share in the proceeds to be derived from the sale of the cut logs. The plaintiff agreed. The circular saw used in this undertaking had a diameter of a few feet and was attached to a tractor which supplied the power to operate it. When in full motion the saw was capable of 1120 circular revolutions a minute. The plaintiff had some previous experience in operating a similar saw under the supervision of his father, and Fred had even less experience. The boys had never previously operated this saw or a similar saw together, and neither had operated a saw before without supervision. In the course of the program of cutting logs, the ring finger of the plaintiff's left hand came in contact with the revolving saw and was deeply cut, which necessitated an amputation at the first joint.

From the evidence as a whole the jury could well find that the defendants had knowledge of their son's invitation to the plaintiff to join with him in using the saw in question, which they had furnished him, and that they fully acquiesced in that invitation.

In its charge to the jury the court expressly withdrew from their consideration the allegation in the complaint that the saw was dull and that the belt did not operate properly. This was because the evidence did not support the allegation. So also the court withdrew from their consideration another allegation to the effect that the defendants had control over their minor son and had reason to know of the necessity of exercising such control. This was because the allegation was not considered pertinent to the case as presented by the plaintiff at the trial.

The court did consider with the jury in detail the law of negligence as it applied to the other allega-

tions of negligence recited in the plaintiff's complaint as directed against the defendants, the doctrine of proximate cause, the law of contributory negligence and voluntary assumption of risk as applied to the special defenses interposed by the defendants, and the standard of proof required of the plaintiff in connection with the essential allegations of his complaint, and that required of the defendants in support of their special defenses. So also the attributes of the expression "inherently dangerous instrumentality," alleged by the plaintiff in regard to the saw, were defined and left to the jury to determine as a question of fact from the evidence as a whole. The saw was before the jury as an exhibit in the case, and considerable testimony was offered as to how it operated.

The over-all picture presented by the verdict ultimately returned by the jury reflects what has so eloquently been expressed by the Supreme Court of the United States in *Sioux City & P. R. Co.* v. *Stout,* 84 U.S. (17 Wall.) 657, 664: "Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain." Since women also serve as jurors in the world of today, their various backgrounds can be supplemented to the concept so well stated in the foregoing quotation.

Cases such as *Herman* v. *Board of Education,* 234 N.Y. 196, *Ahern* v. *Livermore Union High School District,* 208 Cal. 770, and *Lang* v. *Hedrick,* 229 Iowa 766, cited by the plaintiff, demonstrate that the

essential questions in the case at bar were factual and that the findings of the jury thereon should not be disturbed. It is the considered opinion of the court that the verdict is sustainable in law and in fact.

The motion of the defendants to set aside the verdict on the prosaic grounds of being contrary to law, against the evidence and excessive is denied. The last-named ground, that the verdict was excessive, was doubtless included inadvertently. The amount of damages awarded is patently modest.

So also the motion of the defendants that judgment in their favor be entered pursuant to the provisions of § 234 of the Practice Book, is likewise denied.

Judgment may enter on the verdict of the jury.