JOHN DEERE & COMPANY, Libellant,

v.

MISSISSIPPI SHIPPING CO., Inc., Respondent.

No. 2970.

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 20, 1959.

Montgomery, Barnett, Brown & Read, Henry J. Read, New Orleans, La., for libellant.

Terriberry, Rault, Carroll, Martinez & Yancey, Benjamin W. Yancey, New Orleans, La., for respondent.

J. SKELLY WRIGHT, District Judge.

Libellant in this case is a shipper who seeks to recover for damage to a shipment consisting of one boxed tractor and two tractor wheels. The damage occurred on October 13, 1953 while the tractor was being loaded on the respondent carrier's vessel. Owing to a defect in the ship's tackle, the tractor was dropped some forty feet into the lower hold. In its stipulation of facts the carrier admits liability for the resulting damage. The only question is whether that liability is limited to $500 for this single package. The full damages suffered were $2,961.16.

On October 9, 1953, the shipper prepared a dock receipt on carrier's printed form setting forth all the relevant details of the shipment and presented it to the carrier's agent, who stamped it "OK For Delivery." On October 12th, the tractor was delivered to the wharf, and the carrier signed the dock receipt and noted the delivery thereon.

A dock receipt of this type is a document of title which is evidence of a contract for the carriage of goods by sea. Such a contract arises out of the earlier negotiations of the parties, and becomes binding, at the latest, when the goods are delivered to the carrier. See Knauth, Ocean Bills of Lading (4th ed. 1953) p. 144. In this case the contract was a binding obligation at least from the time the dock receipt was stamped by the carrier. The dock receipt does not

state the amount of the freight charges, but these are merely a matter of simple arithmetic using the fixed rates found in the carrier's published tariff. Normally, the contract takes final form in a bill of lading issued by the carrier.[1] But where, as here, the details of the bill of lading are agreed to in advance, the contract is complete at the time of the agreement. Luckenbach S. S. Co., Inc. v. American Mills Co., 5 Cir., 24 F.2d 704; Corbin, Contracts § 29; 12 Am.Jur., Contracts § 24. Thus the carrier's liability for the damage is governed by the terms and legal effect of the dock receipt.

█ The printed portion of this dock receipt[2] adopts, and incorporates by reference, the provisions of the Carriage of Goods by Sea Act[3] and the provisions of carrier's standard form of bill of lading. This bill of lading states that the provisions of the Carriage of Goods by Sea Act shall govern throughout the entire time the goods are in the custody of the carrier, including the period before the goods are loaded on the vessel.[4] The section of that Act pertinent to this case is as follows:

46 U.S.C.A. § 1304

"(5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, * * * unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier."

The Act thus gives the shipper an option to avoid the limitation of liability and make the carrier the insurer of the cargo. To exercise this option effectively, the shipper must declare the value of the cargo, insert the declared value in the bill of lading and pay a higher freight

---

1. The damaged tractor in suit was removed from the ship and no bill of lading was ever issued.

2. The dock receipt contained the following provisions:
"Received as aforesaid by Mississippi Shipping Co., Inc., the above described goods, * * * subject to all of the * * provisions of this Cargo Receipt, including expressly those set forth on the reverse side hereof, and also to be held and delivered to a vessel * * * subject to the * * * provisions of bill of lading to be issued by or for the Master in the form designated applicable to such carriage, which are incorporated herein and made a part hereof to which the shipper assents by acceptance hereof. Copies of the form of bill of lading referred to herein are on file and may be inspected at the office of the Carrier, Hibernia Bank Bldg., New Orleans, Louisiana."
"3. The provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, shall govern the relations of all parties concerned herewith."

3. 46 U.S.C.A. § 1300 et seq.

4. The carrier's regular form of bill of lading provided in its pertinent portions:

"3. * * * This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States of America, approved April 16, 1936, which shall be deemed to be incorporated herein, * * *. The provisions stated in said Act * * * shall govern before the goods are loaded on and after they are discharged from the ship and throughout the entire time the goods are in the custody of the Carrier."
The bill of lading also contained the following paragraph, a restatement of that part of the Carriage of Goods by Sea Act pertinent here:
"4. It is also mutually agreed that the carrier has offered the shipper a choice of freight rates, the lower rate applying if the shipment is made at the value specified in this paragraph and the higher rate applying if the shipment is made at a higher value; that unless, before shipment, a higher valuation is declared by the shipper in writing as the basis for freight and inserted in this bill of lading, the value of the goods, in view of the difficulty of ascertaining exact market value, shall, for all purposes of adjustment of claims, be taken to be $500 per package * * *."

rate. In this case the carrier's tariff fixed the higher rate at 2% of the declared value, plus the regular cargo rate.

It is apparent from the quoted provisions of the dock receipt and bill of lading that the parties intended the Carriage of Goods by Sea Act, including the limitation of liability option, to apply to this shipment from the time the tractor was delivered to the wharf. At no time did the shipper make any attempt to declare the value of the tractor "before shipment" as required by the Act.[5] Having failed to exercise his option in the prescribed manner, he now asks this Court to relieve him of the limitation he thus accepted. The shipper cites several cases [6] for the proposition that such a limitation of liability is invalid unless the shipper is offered a free choice of rates, an option to avoid the limitation by paying a higher rate. He asserts that since the limitation can only be avoided by a declaration of value inserted in the bill of lading, and since the bill of lading was not to be issued until after the shipment was loaded, he had no opportunity to exercise the option until that time, and is, therefore, not bound by the limitation.

This contention finds no support either in the facts or the law. 46 U.S.C.A. § 1304(5) places the burden on the shipper to make the declaration of value and insert it in the bill of lading; and § 1303 (3) gives the shipper the right to demand a bill of lading from the carrier at any time after delivery of the goods for shipment. There is nothing in the record to show that the shipper could not have required the carrier to issue a "Received for Shipment" bill of lading declaring the full value of the tractor at the time of delivery to the wharf. On the contrary, it appears that on this and other occasions the shipper acquiesced in the use of the dock receipt and the later issuance of the bill of lading with full knowledge of the terms limiting the carrier's liability

and the procedure necessary to avoid the limitation. Having made no attempt to use this procedure by making a declaration of value and requesting the carrier to issue a bill of lading, the shipper cannot now complain of the forms actually provided and accepted by him without protest.

Judgment for libellant in the amount of $500.

---

5. 46 U.S.C.A. § 1304. Here the time for making the declaration "before shipment" had long passed because the cargo was already in the ship's tackle when damaged.

6. e. g. The Merauke, 2 Cir., 31 F.2d 974, 1929 A.M.C. 596; Venezuelan Meat Export Co. v. United States, D.C., 12 F. Supp. 379, 1935 A.M.C. 1481.