Frances Metzger Wirth STEPHAN, Guardian of the Estate of Charles Wirth, Plaintiff-Appellant,

v.

The MARLIN FIREARMS COMPANY, Inc., et al., Defendant-Appellees.

No. 41, Docket 29128.

United States Court of Appeals Second Circuit.

Argued Oct. 25, 1965.

Decided Dec. 20, 1965.

See also D.C., 217 F.Supp. 880, affirmed 2 Cir., 325 F.2d 238.

820

Theodore I. Koskoff, Bridgeport, Conn.
(James M. Desmond, Norwalk, Conn., and

John D. Guman, Jr., Bridgeport, Conn., on the brief), for plaintiff-appellant.

Kevin T. Gormley, New Haven, Conn. (Martin E. Gormley and Gerald P. Dwyer, New Haven, Conn., on the brief), for Marlin Firearms Co., defendant-appellee.

Donald J. St. John, Bridgeport, Conn. (Paul V. McNamara, Bridgeport, Conn., on the brief), for John Misciuch, defendant-appellee.

Adrian W. Maher, Bridgeport, Conn. (Kevin J. Maher, Bridgeport, Conn., on the brief), for Carl Pavlick, defendant-appellee.

Before LUMBARD, Chief Judge, SMITH, Circuit Judge, and LEVET, District Judge.*

LEVET, District Judge.

The plaintiff appeals from a jury verdict in favor of four defendants in a diversity action which sought damages for injuries suffered by the plaintiff's ward in a hunting accident.

The action centers around one. 22 calibre rifle, a Model 39A manufactured by appellee Marlin Firearms Company, Inc. in 1947. On September 23, 1961, appellee Charles Pavlick, then fifteen years old, accompanied by his uncle, appellee, John Misciuch, purchased the rifle in question, second hand, from a retail gun shop run by appellee Landers. Pavlick was too young to buy the rifle himself, but it was purchased by Misciuch and turned over to Pavlick in Landers' presence. This rifle had an exposed hammer which contained both a full-cock and a half-cock notch, the latter being a safety position.

Shortly after the purchase, the rifle jammed while Pavlick was using it. He returned it to Landers, who, in turn, sent it to Marlin for repairs. Marlin repaired the rifle, test-fired it, and returned it to Landers who, without testing it himself, gave it back to Pavlick.

On November 2, 1961, Pavlick went hunting with Charles Wirth. While walking single file, with Wirth in front, Pavlick attempted to put the Marlin rifle on safety, but his thumb slipped off the hammer. Thereupon the gun discharged, the bullet striking Wirth in the back. Wirth's spinal cord was severed, causing permanent paraplegia. Pavlick was inexperienced in the use of firearms, although he had taken some National Rifle Association safety courses, had examined gun periodicals, and had talked with Wirth, who had experience with guns.

After the accident, Frances Stephan, guardian of the estate of Charles Wirth,[1] instituted this action to recover damages from any or all of four defendants, Marlin, Pavlick, Misciuch, or Landers, for the severe bodily injuries suffered by Wirth in the hunting accident. The complaint alleged negligence against all four defendants as well as breach of warranty against Marlin and Landers. After trial before a jury, a verdict was returned in favor of all the defendants. Plaintiff, now appellant, then moved for judgment notwithstanding the verdict but her application was denied because she had not moved for a directed verdict. Fed.R. Civ.P. 50(b). She further moved for a new trial, which was denied after full argument in open court. Plaintiff appeals from the judgment and the denial of her motion for a new trial.

Appellant raises four grounds on this appeal: (1) that appellant was denied both a fair trial and due process of law by reason of alleged limitations placed by the trial court on the scope of the voir dire examination of prospective jurors; (2) that the trial judge committed error by holding inadmissible a hammer with an offset spur, manufactured by appellee Marlin; (3) that the trial judge erroneously refused to grant certain requests to charge; and (4) that the jury's verdict is inconsistent and against the

---

* Sitting by designation.

1. A motion to dismiss on the ground that plaintiff Stephan was appointed guardian for the express purpose of conferring diversity jurisdiction was denied. This court affirmed per curiam. 325 F.2d 238 (2 Cir. 1963).

weight of the evidence. We affirm the judgment.

## I. THE VOIR DIRE

A careful examination of the transcript of the voir dire reveals that appellant has no ground for complaint. During the course of the voir dire, one prospective juror was excused for cause after revealing his expertise in guns. Appellant then requested the trial judge to inquire into the experience of all the jurors. Judge Timbers refused because such an inquiry would take too long and would be too broad in scope, although he appeared to be willing to ask whether any of the prospective jurors was expert in the use or repair of guns. Instead, appellant's counsel requested that the question be narrowed to whether any prospective juror was a member of the National Rifle Association or any gun club; Judge Timbers acquiesced in this request and asked the question as limited by counsel.

■ Considerable discretion is lodged in the trial court as to questions asked in the voir dire. Application of Cohn, 332 F.2d 976 (2nd Cir. 1964); Fredrick v. United States, 163 F.2d 536, 550 (9th Cir.), cert. denied 332 U.S. 775, 68 S.Ct. 87, 92 L.Ed. 360 (1947), citing Connors v. United States, 158 U.S. 408, 15 S.Ct. 951, 39 L.Ed. 1033 (1895). An appellate court is not free to interfere with a trial court's ruling in this area unless an abuse of discretion is shown. Spells v. United States, 263 F.2d 609, 612 (5th Cir.), cert. denied 360 U.S. 920, 79 S.Ct. 1439, 3 L.Ed.2d 1535 (1959); Butler v. United States, 191 F.2d 433, 435 (4th Cir. 1951). While it would be an abuse of discretion to refuse to inquire whether a juror has a fixed opinion which is dispositive of an issue in the case, no such question was requested here. Appellant did not request an inquiry as to whether any juror had an opinion on the adequacy of the Marlin safety mechanism; counsel's request was general and imprecise and was properly refused in light of the fact that each prospective juror was alerted to indicate whether his own experience would prejudice his verdict when a juror was disqualified because of expertise. There is no evidence in the record that appellant was denied the information necessary to exercise an intelligent use of her peremptory challenges. Compare Kiernan v. Van Schaik, 347 F.2d 775 (3rd Cir. 1965). Moreover, as long as an impartial jury is selected, neither party has any complaint, at least in a civil case. Northern Pacific R. R. Co. v. Herbert, 116 U.S. 642, 646, 6 S.Ct. 590, 29 L.Ed. 755 (1886).

■ Apppellant, further, submitted an affidavit to show that one juror was an "expert" in firearms based on his service in the United States Army, but she failed to show that any bias resulted from this knowledge. A verdict may not properly be based on a juror's personal knowledge which is not part of the evidence, but as W. C. Viall Dairy, Inc. v. Providence Journal Co., 79 R.I. 416, 89 A.2d 839 (1952), cited by appellant, notes, the proper manner for protecting the parties from jurors' personal knowledge is to instruct them not to import into the case their personal knowledge. Judge Timbers' charge told the jury very clearly to consider only the evidence introduced in the case. Appellant's speculations that this juror with his weapons "expertise" must have influenced the jury to her prejudice are no basis for reversing the judgment and granting a new trial here. In absence of a contrary showing, it must be assumed that the jury followed the court's instructions. Baltimore & Ohio R. R. Co. v. Felgenhauer, 168 F.2d 12, 17 (8th Cir. 1948); Crockett Engineering Co. v. Ehret Magnesia Mfg. Co., 81 U.S.App.D.C. 159, 156 F.2d 817, 820 (1946); Husky Refining Co. v. Barnes, 119 F.2d 715, 717, 134 A.L.R. 1221 (9th Cir. 1941).

## II. EXCLUSION OF THE HAMMER

Appellant's second claim is that the trial court erred in excluding from evidence a hammer with an offset spur manufactured by Marlin subsequent to the marketing of its 1947 model. Appellant offered the offset spur during its redirect

examination of Harry A. Teator, a Marlin employee who had testified that the spur was a new device installed on guns having a telescopic sight. Judge Timbers' ruling is preceded in the record by a lengthy colloquy that sets forth appellant's arguments for admissibility and the reasons why Judge Timbers excluded this offer. We find no error.

Appellant argued to Judge Timbers that the offset spur was evidence that the safety mechanism on Pavlick's rifle was defective in design. Judge Timbers ruled that this subsequent technological improvement was not relevant to the question of negligent design and that, even if relevant, it was excludable because evidence of subsequent repairs is not admissible to prove negligence.

 Under Connecticut law, evidence as to remedial measures taken after an accident is excluded on the basis of a policy to encourage repairs. See Shegda v. Hartford-Connecticut Trust Co., 131 Conn. 186, 38 A.2d 668 (1944). The offset spur, however, represented a technological improvement not prompted by a specific prior injury; thus, the exclusionary "repairs" doctrine did not squarely apply here. Nevertheless, we conclude that Judge Timbers' alternative ground was an appropriate exercise of his discretion, namely, that a subsequent technological improvement such as the offset spur was not relevant, according to principles of "American ingenuity of design manufacture," to the issue of prior negligent design.

 Appellant also argued that the existence of the offset spur would demonstrate that Marlin had a continuing duty requiring it to install this improvement when Pavlick's gun was returned for repairs. Judge Timbers held that, unless the original design was inherently unsafe, Marlin was under no duty to install an improvement in design when the gun was submitted for specific, unrelated repairs. Finding insufficient independent evidence indicating that Marlin's 1947 design was faulty and no evidence either that the offset spur was a safety improvement or that it could be used on rifles, like Pavlick's, lacking a telescopic sight, Judge Timbers ruled that the spur was not relevant to Marlin's alleged negligence. He "sustain[ed] the objection with leave to the plaintiff to renew the offer, if there should be appropriate occasion, based on a change in the record in its present status." We agree with this ruling. Moreover, appellant did not attempt to offer the spur again along with additional evidence establishing its relevance; hence, she was not prejudiced by the Judge's ruling that, as to this ground, the offer was at best premature.

Lastly, appellant argued that the offset spur should be admitted to impeach the credibility of Teator, Marlin's employee.[2] However, it does not appear from the record that the existence of the offset spur significantly contradicted the testimony of Teator. Teator did testify that there had been no changes in the half-cock safety device after 1947. But he did not testify, as appellant here claims, that no technological changes were made in the Model 39A rifle after 1947. Instead, he admitted the development of the offset hammer spur but claimed that the spur could only be used on guns with a telescopic sight and that it had no effect on the half-cock safety device. All in all, we conclude that appellant was not prejudiced by the exclusion of this evidence.

### III. Charge to the Jury

 Appellant urges that several of her requests to charge directed to Marlin's duty as manufacturer and repairer of the rifle were improperly refused. However, an examination of the charge

2. Marlin raises the issue whether Rule 43(b) of the Federal Rules of Civil Procedure allows appellant to attack the credibility of Teator, her own witness, since he was not "an officer, director, or managing agent of a * * * corporation * * * which is an adverse party," as required by the rule. We need not decide this question, however, since we find other sufficient reasons for sustaining Judge Timbers' ruling.

and a comparison with the requests convince us that the requests refused either were incorporated in substance in the charge or do not state the law of Connecticut, applicable to the present case. Specifically, Requests 3, 4, 5, 11a and 18 were covered in substance. Request 7, dealing with the burden of going forward with the evidence after plaintiff has shown the existence of danger, states the law of Massachusetts, see Sylvania Electric Products, Inc. v. Barker, 228 F.2d 842, 1st Cir. 1955), cert. denied 350 U.S. 988, 76 S.Ct. 475, 100 L.Ed. 854 (1956), but appellant has not cited and we cannot find any authority holding that the rule stated in Request 7 is the law of Connecticut. With regard to Requests 6, 8 and 11, appellant did not preserve objections as required by Rule 51 of the Federal Rules of Civil Procedure. In any event, since the matter therein was adequately submitted to the jury, appellant has no basis for complaint. Read in its entirety, Judge Timbers' charge was wholly appropriate.

## IV. Verdict Inconsistent and Against the Evidence

Appellant's fourth and final contention, that the verdict is inconsistent and against the weight of the evidence, is based upon her erroneous assumption that one of the defendants must be held liable. Such a theory may be novel, but it is not the law. Rather, our duty is solely to review the record to determine whether there was sufficient evidence to support the jury's verdict in favor of each defendant. We need not decide whether a state or federal standard determines the sufficiency of the evidence to support a jury verdict in a diversity case, see Dick v. New York Life Ins. Co., 359 U.S. 437, 444–445, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959); Mercer v. Theriot, 377 U.S. 152, 157, 84 S.Ct. 1157, 12 L.Ed.2d 206 (1964), as the jury's verdict here will stand even under the stricter standard.

From the evidence, we conclude that the jury could have found that the design of the Marlin rifle was safe so that neither a duty to warn nor a duty to install a new safety mechanism nor a breach of warranty existed on Marlin's part. As to Landers, the jury was justified from the relevant evidence in finding him not negligent when he sold a rifle to an adult even though he might believe that a minor would be its principal user. As to Misciuch, the pertinent evidence reveals both that he took no part in Pavlick's use of the rifle and that he obtained the permission of the boy's mother to purchase the rifle; on this evidence the jury could have absolved him. See Wood v. O'Neil, 90 Conn. 497, 97 A. 753 (1916). With regard to Pavlick, Connecticut law, unlike the law of many jurisdictions, does not require the person handling the gun to establish that the accident was unavoidable before he may be held blameless in cases such as the one at bar. Wood v. O'Neil, supra. Compare Hawksley v. Peace, 38 R.I. 544, 96 A. 856, L.R.A.1916D, 1179 (1916). In the Wood case, a sixteen-year old boy and his parent were sued for damages arising out of an accident in which the boy had killed a young girl with a shotgun given to him by his parents. The Supreme Court of Errors of Connecticut affirmed a nonsuit in favor of the defendant parents, finding no evidence that they had placed the gun in the boy's hands with knowledge that the gun was defective or that the boy was a careless user of guns;[3] it also affirmed a jury verdict for the defendant boy, finding that the evidence as to the boy's negligence was conflicting. Here, we are constrained to hold that the jury, on the basis of the

---

**3.** Appellant contends that Wood v. O'Neil was overruled in Jones v. Izzo, 21 Conn. Sup. 28, 143 A.2d 460 (Super.Ct.1958). We disagree. The Jones v. Izzo court, in affirming a jury verdict *against* the parents of a boy who had accidentally injured another with a power saw, merely said that Wood v. O'Neil appeared to be against the weight of authority in other jurisdictions. Jones v. Izzo did not face the question, as did Wood, of whether the jury could find *in favor of* parties in the position of Misciuch and Pavlick here.

proof as to Pavlick's age and lack of experience, had sufficient grounds for finding the shooting accidental and Pavlick not negligent according to the standard of care set for those his age.

In short, there is sufficient evidence to support the jury's verdict, and there is nothing inconsistent about it. To be sure, the verdict is not a happy one for the plaintiff, but, as long as recovery in tort is based on fault, it is axiomatic that there will be some injuries which remain uncompensated.

Affirmed.