**SCOTT & WILLIAMS, INC., Plaintiff,**

v.

**PITTSTON STEVEDORING CORP., Defendant.**

**No. 75 Civil 5166.**

United States District Court,
S. D. New York.

Nov. 4, 1976.

---

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff commenced this diversity action against defendant, Pittston Stevedoring Corporation ("Pittston"), a stevedore, to recover damages for its alleged negligent handling of a knitting machine prior to its delivery aboard a vessel for shipment to plaintiff's customer in Sao Paulo, Brazil. Although no bill of lading covering the shipment was issued, a basic and determinative issue is whether one became effective; if it did, then the defendant is entitled to the benefits of the United States Carriage of Goods by Sea Act [1] ("COGSA") with respect to limitation of damages and to the one-year time bar for commencement of suit. Upon the entire record, I hold that the defendant, who has the burden of proof on this issue,[2] has failed to sustain that burden.

The facts are not in dispute. Plaintiff, a manufacturer of knitting machines, entered into an agreement to sell a machine to a customer in Sao Paulo, Brazil. The purchase price was payable by letter of credit upon presentation of a bill of lading. The required letter of credit was duly issued. Plaintiff delivered to a trucker at Laconia, New Hampshire two cases, one containing the knitting machine and the other its motor, consigned to Moore-McCormack Lines, Inc. ("Mormac") at the 23rd Street, Brooklyn, New York pier for shipment to plaintiff's purchaser. Mormac had an agreement with Pittston under which Pittston performed stevedoring services in connection with the loading of cargo onto Mormac vessels. The two cases were delivered by plaintiff's trucker on February 28, 1974, to the loading pier. A clerk employed by Pittston signed a dock receipt "for the Master," which contained no exceptions to the condition of the shipment. The receipt, which was prepared by plaintiff's shipping agent on a form provided by Mormac stated:

> Received the above described goods or
> packages subject to all the terms of the

Martin, Van De Walle & Sawyer, Great Neck, N.Y., for plaintiff; Charles R. Van De Walle, Great Neck, N.Y., of counsel.

Symmers, Fish & Warner, New York City, for defendant; William Warner, New York City, of counsel.

1. 46 U.S.C. §§ 1300–15.

2. Fed.R.Civ.P. 8(c). *See also American Mach. & Foundry Co. v. Santini Bros., Inc.*, 54 Misc.2d 886, 283 N.Y.S.2d 574 (Sup.Ct.1967).

undersigned's [Mormac's] regular form of dock receipt and bill of lading which shall constitute the contract under which the goods are received, copies of which are available from the carrier on request and may be inspected at any of its offices.

■ On February 28, 1974, while a Pittston employee was moving the case containing the knitting machine from the receiving platform, it fell off the hi-lo onto its side, and the machine was considerably damaged. The machine was never loaded aboard the vessel and so no bill of lading was ever issued. However, the case containing the motor was inadvertently shipped to the customer in Brazil and later returned to the United States. Upon this record there can be no doubt that the handling of the machine by Pittston was negligent. Indeed, after an investigation, Pittston's own representative was of the view that defendant was responsible.

Pittston, in reliance upon the terms of an unissued bill of lading, contends that it is entitled to assert COGSA's limitation of liability and time bar to suit.[3] To support this contention it points to the dock receipt, already referred to, which states that the plaintiff's shipment was received subject to all the terms of Mormac's "bill of lading . . . copies of which are available from the carrier on request and may be inspected at any of its offices." It asserts that the parties thus incorporated into their agreement the relevant bill of lading, which extends the benefits of COGSA to stevedores even before the goods are loaded upon the vessel. In sum, it argues that the stevedore was rendering services in connection with the carriage of the knitting machine preparatory to and incidental to its loading aboard the vessel when the damage was

sustained and accordingly is entitled to the protection of the bill of lading.

■ Any intention of the parties to extend the benefits of a bill of lading to the stevedore must be clearly evidenced.[4] The fact is, however, that Mormac was using two different forms of bills of lading at the time the dock receipt was issued. Although on January 23, 1973, Mormac had filed an amended form of bill of lading with the Federal Maritime Commission,[5] the motors in the second case delivered to Pittston, which were mistakenly shipped to Brazil, were returned under Mormac's old form of bill of lading. Until the eve of the trial in this case Pittston itself was unaware of the existence of the new bill of lading and believed that the old form would have eventually issued. Indeed, when this litigation commenced, Pittston requested from Mormac one of its bills of lading in order to assist in the preparation of the case, and Mormac forwarded the old form. Not until April 1976, six months after suit had been filed, did Pittston, with the "excellent cooperation . . . of Moore-McCormack Lines," discover the existence of the new form of bill of lading. At that time, April 1976, Mormac informed Pittston's claims agent that the new form "would have been issued," but, in light of the events preceding the making of this statement, it is entirely uncertain which form would in fact have issued.

■ Under these circumstances, it cannot be said that either form of bill of lading was incorporated into the parties' agreement concerning the transportation of the knitting machine to Brazil. Given that the new form was either not being used at all or was being used along with the old form, the dock receipt did not refer to either document with the specificity necessary to effect an incorporation by reference.[6]

3. 46 U.S.C. §§ 1303(6), 1304(5).

4. *Cabot Corp. v. S.S. Mormacscan,* 441 F.2d 476 (2d Cir.), *cert. denied,* 404 U.S. 855, 92 S.Ct. 104, 30 L.Ed.2d 96 (1971).

5. Mormac apparently filed the amended bill of lading in response to *Cabot Corp. v. S.S. Mormacscan,* 441 F.2d 476 (2d Cir.), *cert. denied,* 404 U.S. 855, 92 S.Ct. 104, 30 L.Ed.2d 96

(1971), in which the Court of Appeals held that Mormac's old form of bill of lading did not refer to stevedores with enough specificity to extend to them the COGSA limitation of liability. 441 F.2d at 478.

6. *See Ehret Magnesia Mfg. Co. v. Gothwaite,* 80 U.S.App.D.C. 127, 149 F.2d 829 (1945); *Lowry & Co. v. S.S. Le Moyne D'Iberville,* 253

Moreover, the burden of providing a form of dock receipt that clearly identifies the unissued bill of lading to be incorporated into the contract of carriage rests heavily on the carrier, since the document sought to be incorporated is itself "a contract of adhesion prepared by the carrier."[7] This is especially so when the bill of lading contains a clause purporting to limit liability, for such clauses are construed strongly against the party sponsoring them if any ambiguity exists.[8] Finally, Pittston did not introduce any evidence whatsoever to indicate that plaintiff or its agents were aware of the terms of either bill of lading or that the parties actually intended or expected that one form rather than the other would issue. Courts have, of course, held that parties may incorporate into their contract of carriage the terms of a bill of lading that has not yet issued, but these decisions rest on findings that the party against whom enforcement is sought was shown to have known or to have had a reasonable expectation that a particular bill of lading would issue.[9] Such is not the case here; neither

of Mormac's forms became effective, and the stevedore thus cannot claim the benefits of either.

 The final question is the amount of damages to be awarded. Under New York law, plaintiff is entitled to recover the reasonable cost of repairs necessary to restore the machine to the condition it was in prior to the accident.[10] At trial, the president of Scott & Williams testified that the knitting machine, which was rendered totally inoperative by the accident, could be restored to its prior condition at a cost of $10,520 and thus made saleable. Documents were received into evidence substantiating this figure, and the Court finds it to represent the reasonable cost of repairing the machine. Plaintiff is also entitled to recover freight and customs charges of $367.92 which it was forced to bear when the machine could not be delivered to the Brazilian purchaser.[11] Accordingly, judgment may be entered for plaintiff in the amount of $10,887.92, together with interest.

F.Supp. 396, 398 (S.D.N.Y.1966), *appeal dismissed*, 372 F.2d 123 (2d Cir. 1967); *United States Fidelity & Guar. Co. v. Long*, 214 F.Supp. 307, 314 (D.Or.1963); *Raeuber v. Central Nat'l Bank*, 112 F.Supp. 865, 868 (N.D.Ohio 1953); *Jones v. Cunard S.S. Co.*, 238 App.Div. 172, 263 N.Y.S. 769, 771 (2d Dep't 1933); 1 A. Corbin, Contracts § 33, at 132–33 (1963).

7. *Cabot Corp. v. S.S. Mormacscan*, 441 F.2d 476, 478 (2d Cir.), *cert. denied*, 404 U.S. 855, 92 S.Ct. 104, 30 L.Ed.2d 96 (1971); *see Caterpillar Overseas, S.A. v. S.S. Expeditor*, 318 F.2d 720, 722 (2d Cir.), *cert. denied*, 375 U.S. 942, 84 S.Ct. 347, 11 L.Ed.2d 272 (1963). Indeed, one needs not a magnifying glass but rather a microscope to read the print of the bill of lading relied upon by defendant in the instant case. *Cf. Siegelman v. Cunard White Star, Ltd.*, 221 F.2d 189, 208–10 (2d Cir. 1955) (Frank, J., dissenting).

8. *Robert C. Herd & Co. v. Krawill Mach. Corp.*, 359 U.S. 297, 305, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959); *The Caledonia*, 157 U.S. 124, 137, 15 S.Ct. 537, 39 L.Ed. 644 (1895); *Bernard Screen Printing Corp. v. Meyer Line*, 328 F.Supp. 288 (S.D.N.Y.1971), *aff'd*, 464 F.2d 934 (2d Cir. 1972), *cert. denied*, 410 U.S. 910, 93 S.Ct. 966, 35 L.Ed.2d 272 (1973).

9. *See, e. g., Luckenbach S.S. Co. v. American Mills Co.*, 24 F.2d 704 (5th Cir. 1928) (expectation that bill of lading would be issued in accordance with standard form known to all shippers); *Baker Oil Tools, Inc. v. Delta S.S. Lines, Inc.*, 387 F.Supp. 617, 622 (S.D.Tex.1974) (freight forwarder at all times "fully aware" of bill of lading provisions); *Berkshire Knitting Mills v. Moore-McCormack Lines, Inc.*, 265 F.Supp. 846, 848 (S.D.N.Y.1965) ("form of bill of lading was concededly known" and parties had "clear intention" to be bound by that form); *John Deere & Co. v. Mississippi Shipping Co.*, 170 F.Supp. 479, 482 (E.D.La.1959) (shipper repeatedly "acquiesced in the use of the dock receipt and the later issuance of the bill of lading with full knowledge of [its] terms").

10. *Gass v. Agate Ice Cream, Inc.*, 264 N.Y. 141, 190 N.E. 323 (1934); *New York State Elec. & Gas Corp. v. Fischer*, 24 A.D.2d 683, 261 N.Y. S.2d 310 (3d Dep't 1965); *Johnson v. Scholz*, 276 App.Div. 163, 93 N.Y.S.2d 334 (2d Dep't 1949); *Adair v. Young*, 205 N.Y.S.2d 463 (Sup. Ct.1959).

11. *See Horn v. State of New York*, 38 A.D.2d 766, 327 N.Y.S.2d 870 (3d Dep't 1972); *New York State Elec. & Gas Corp. v. Fischer*, 24 A.D.2d 683, 261 N.Y.S.2d 310 (3d Dep't 1965).