## William Regensperger, Plff. in Err., *v.* Jacob Kiefer.

A newspaper article alleging that the plaintiff "was arrested because he drew $3,900 pension, wherein he swore in a false manner that the pension papers of another man were his own," is (if found by the jury to mean that the plaintiff both committed the crime and was arrested, and also to be untrue) libelous.

Although the fact that an article was copied from another paper without knowledge of the truth of the statements may be considered by the jury in mitigation of damages, it does not deprive the article of its libelous character.

The proprietor of a newspaper is liable in damages for libelous articles inserted without his knowledge by the editor.

The record of a criminal court showing the arrest on a different charge of a person bearing the same name as the plaintiff is not, in the absence of evidence of identity, admissible in evidence.

(Decided January 24, 1887.)

July Term, 1886, No. 99. Error to Common Pleas No. 4 of Philadelphia County to review a judgment on a verdict for

NOTE.—For the responsibility of the manager of a newspaper for libelous matter contained therein, see Nevin v. Spieckermann, 1 Sad. Rep. 400.

the plaintiff in an action of trespass on the case for libel. Affirmed.

The facts, as they appeared at the trial before WILLSON, J., are stated in the charge to the jury, which was as follows:

The plaintiff, Jacob Kiefer, has brought this action against the defendant, William Regensperger, to recover damages for what he claims to be an unwarrantable injury committed upon his reputation by the publication of what is said to be of a libelous character in the paper of the defendant.

Now the injury, if injury there was, was injury to his reputation. A man's reputation is something which we all know to be very precious to him; and the law guards it, and guards it carefully and sacredly. Perhaps nothing is dearer than his reputation. If it is once lost, it is hard to recover. The loss of it destroys a man's position in society, destroys the pleasures and comforts of his home, and may eventually make him an outcast. Therefore, the law very properly says that the good reputation which a man has shall be protected; and one has a perfect right, when his reputation has been injured without sufficient justification or cause, to come into court and ask of a jury of his countrymen that he shall be redressed for the injury done him. In such a case he can get only a pecuniary redress.

A libel has been defined in many ways, but substantially it is said to be a malicious, defamatory publication, written, printed, or pictorial, by which a man's reputation is affected by his being held up to contempt or ridicule or the degradation of his character.

It is alleged here that the defendant is liable for damages to the plaintiff because there was put in his paper, on October 28, 1883, an article which held him, the plaintiff, up in such a way to the community as degraded run; that he was charged with an infamous crime and thereby his reputation was affected; that he suffered, that he must have suffered thereby, and consequently that he has a right to a verdict to make such reparation as money could make to a man. That is the position taken by the plaintiff.

Now the alleged libel was contained in an article which reads as follows. This is a translation which was made by Mr. Collins and which was conceded to be substantially correct.

"Police Magistrate List held Capt. Jacob Kiefer under $600 bail for malicious desertion of his wife. Kiefer, about one month ago, was arrested because he drew $3,900 pension, wherein he swore in a false manner that the pension papers of another man were his own."

The first part—that which relates to the arrest of Capt. Kiefer and bringing him to bail for deserting his wife—is not a part of the case and you will have nothing to do with that. He is not suing for a malicious libel on the ground that he was charged with being arrested for deserting his wife. [In point of fact he has stated upon the stand that he was arrested, but you do not know what the result of it was. He might have been found innocent. The mere fact that a man is arrested does not of necessity involve his reputation.] The alleged libel consists of the latter part of the article. "Kiefer, about one month ago, was arrested because he drew $3,900 pension, wherein he swore in a false manner that the pension papers of another man were his own."

Now, it is alleged that this article referred to the plaintiff. I think there is enough evidence in the case, and that there is no doubt that the article did refer to him.

· [It is alleged that this article not merely charged him with having been arrested, which would be one thing, but also charged him with having actually done the criminal act, which is quite another matter. I refer to that part of the article which relates to his swearing in a false manner; and it is alleged that the meaning of the article is as last stated. It not merely says he was arrested, but, as I understand it, charges him with being guilty of the offense with which he was charged. If you are of this opinion, upon the evidence, if you are of the opinion that this is the meaning of the article, and that it stated not merely that Kiefer was arrested a month before it was written, but that he was arrested because he had, in point of fact, drawn $3,900 by swearing in a false manner that the pension papers of some other person were his own, then I charge you, if the statement was not true, and was made without just cause, that it was, in the meaning of the law, a malicious, libelous publication, for which the defendant would be responsible in damages. Such would be a case in which the law presumes malice.]

Malice is of two kinds, at least, in the law: an active, positive feeling of malice on the part of a person who does a particular

thing to do harm to another; a disposition to do harm; hatred, which leads a man to try to do what he can to injure another man. That is an active, positive feeling of malice.

But in a legal sense it is equally malice, of a different character to be sure, for a man to publish in his paper articles which attack another man's reputation, unless he has a just and sufficient excuse.

The publisher or proprietor of a newspaper stands before a court and before a jury like any other man. When such publishers do right they ought to be protected; and when it is shown that they have done wrong they must answer for it, just like any other men.

[It is sufficient to say that newspapers, the editors and publishers of newspapers, have great opportunities of doing good and doing mischief. The very fact that they have such opportunities increases their responsibility; and if there is any class in a community who ought to be careful that no harm is done, it is the proprietors who are in charge of this powerful engine —the press.]

[In my judgment, and so I regard the law to be, it is no defense to a publisher or editor of a newspaper, when he shows that a defamatory statement which he has put in his paper was taken from some other paper. It is none the less a wrong to a man, or inexcusable on the part of the publisher or editor, if one paper says that I am a thief, or that I am a corrupt judge, or that a lawyer is a corrupt lawyer, for him to put it in his paper. It is no justification for the proprietor of one paper to reprint such a charge, because he found it in another paper. It is no justification, because the proprietor of the other paper could be held responsible. Such republication may double the wrong perpetrated upon me. It may work a perpetuation of degradation or of an infamous charge, which would have been short lived if not kept in life by repetition.]

I do not say that the fact that the libelous matter is copied from some other source should have no bearing in the case. I think it may have some bearing. I think you will probably infer, as I would infer, from the testimony which appears in regard to the publication of this alleged libelous matter, that there was no intentional malice, no active, positive feeling of hatred on the part of the defendant, or his editor, whereby he

either had this plaintiff in mind or intended to do him an injury.

With reference to the subject of mitigating damages, it is in my judgment relevant and pertinent to show that that which was stated was taken from another paper without a knowledge of the actual facts. But the mere fact that the matter which is alleged to be libelous—if it be libelous—the mere fact that the matter was taken from some other paper does not justify the editor or publisher who puts it in his own.

No editor or publisher can relieve himself from moral or legal responsibility for making infamous charges against a citizen by a reckless selection of matter from other papers. The reputation of people would be worth very little if it could be sacrificed in such a way; and those who are in charge of newspapers are as much answerable for false statements which are taken from other papers as those who originally put it in their own. As I have already said, with reference to the mitigation of damages, the fact that the article alleged to be libelous was extracted from another paper, without any actual intention of doing harm might have a good deal of weight.

[Nor does it make any difference in this case, or in a like case, that the publisher of the paper did not himself have anything to do with the selection or insertion of the libelous matter, if you find it to be so from the evidence.

The law says that the proprietor of a paper is responsible for the acts of his agents in such matters; he is responsible for the acts of those in his employ, and if, in view of what I have said, you should be of the opinion that the publication complained of was libelous, then the defendant is responsible for the action of Mr. Stumpf, his editor, in the selection of this article and the publication of it in his paper.]

[It is certainly in the power of a newspaper to publish what would hold a man up to the scorn and contempt of a community; but it is the duty of its managers to inquire into such an accusation, and ascertain whether or not it is true. If they choose to take the risk and do not try to find out whether it is true or not, they are answerable for the consequences of false defamation; and it is only right that they should be held for damages to the extent of the injury caused by the publication.]

In this case, if you should think that this article related to the plaintiff, and, indeed, it has not been disputed, [if you shall

think from the evidence that the article has the meaning which it is alleged to have, and I think it has, then the only other question which you would have to consider would be what the damage should be.] I do not see, I say it in justice to the defendant, that there is any evidence of actual malice on his part towards the plaintiff. I do not see that he had any wicked or evil thought toward the plaintiff particularly. The only ground on which you would be entitled to draw the inference of malice would be the legal grounds which I have stated to you.

I may as well at this point refer to the record which has been offered in evidence. That record was admitted at my suggestion when a plea was about to be filed and to be followed by a demurrer, because I intended to give you instructions in regard to it. [The defendant cannot in any possible way use that record. It was offered for the purpose of showing that in the month of September, 1883, a Jacob Kiefer was arrested on the charge of knowingly and wilfully procuring the making of a false affidavit concerning the claim of David Rentschler.

Now, in the first place, in regard to that I have to say to you there is nothing in the evidence to show that the Kiefer who is mentioned in that record is the plaintiff here. You cannot draw inferences to the discredit and disadvantage of a man, without something to base it upon.

In the second place, even if it were not so, the charge upon which that record shows that a Jacob Kiefer was arrested is an entirely different charge, different in its nature and kind from that to which the article in the paper relates. The record refers to a charge for knowingly and wilfully procuring the making of a false and fraudulent affidavit in regard to somebody else's pension claim. The charge here is that the paper of the defendant stated that he himself, the plaintiff, had falsely sworn in regard to his own claim; and for that reason, which I deem to be fully sufficient, I instruct you, gentlemen, that the record has nothing whatever to do with the case and is not evidence.]

When you come to the matter of damages, if you do, if you think the plaintiff has made out a case which entitles him to recover damages from the defendant, you are to make up a verdict as best you can. You are not to run wild for the purpose of punishing anybody or benefiting anybody. You are to exercise your judgment—your good judgment. You know that the position of a man in life and the character which he has may have

a good deal to do with determining what is proper in particular cases.

[While in a case of this kind—a defamatory article published without excuse, if you find it to be so—the law would entitle the plaintiff to recover more than nominal damages, to recover what the law calls exemplary or punitive damages, yet I say to you, as I have already said, that you must exercise your best judgment as to what, under the circumstances, would be a fair compensation to the plaintiff for such injury to his reputation, if you find he has suffered.]

The defendant has asked me to charge you upon certain points:

"1. If the circumstances show that the defendant might reasonably be supposed to have had a proper motive, then there is no inference of malice from the mere falsity of the charge, and plaintiff must prove actual malice."

*Ans.* Under the circumstances, in view of the evidence of this case I decline so to charge you. I do not think the facts as shown here by the evidence make the point a pertinent one.

"2. If the article was copied from another newspaper and there was no malice, there can be no more than nominal damages."

*Ans.* That would be true generally, if there were no malice; but as I have already told you, if you believe that the article was defamatory in its character, false, and published without excuse, there was malice and you would be entitled to give more than nominal damages.

"3. No damages other than actual damages proved can be charged against the defendant, for the article in question, if the jury find that the defendant had no knowledge of the character of the publication in question until after it was published, unless defendant was guilty of negligence in the selection of his employees, or reckless in the conduct of his paper."

*Ans.* I decline so to charge you.

"4. If the jury find that defendant was not actuated by malice, then, unless some actual damage has been proved, the verdict should be for the defendant."

*Ans.* That would be so, as I have already instructed you, in regard to the second point; but if you believe that the article was defamatory in its character, in charging the plaintiff with having committed the crime, then there was malice, and you could not give a verdict for the defendant.

There is one point on which, in consequence of a word from the defendant's counsel, I will speak to you further. I spoke to you in regard to the first part of the alleged libelous publication in regard to the desertion of his wife. I was understood to say you were not to consider that at all. If I said that, it was not what I meant to say. You are entitled to consider the whole article. What I meant to say was, and all I meant to say was, that that part which relates to the desertion of his wife was not libelous, and to that extent you are not to consider that article as being a libelous matter; but you are entitled to take into consideration the whole article, for the purpose of understanding its full scope, and so far as it has any such bearing for the purpose of testing the motive of publication.

The verdict was for the plaintiff for $520.

The assignments of error specified so much of charge as appears in brackets, and the answers to the defendant's points.

*E. Cooper Shapley,* for plaintiff in error.—Punitive damages are not recoverable in a case of this kind where there was no actual malice. Neeb v. Hope, 111 Pa. 145, 2 Cent. Rep. 71, 2 Atl. 568; Hamilton v. Eno, 81 N. Y. 127.

A jury may not find punitive damages in a case of mere legal malice, equally as in a case of actual malice. Rose v. Story, 1 Pa. St. 197, 44 Am. Dec. 121; Pittsburgh Southern R. Co. v. Taylor, 104 Pa. 306, 49 Am. Rep. 580; Odgers, Libel & Slander, 301; Nagle v. Mullison, 34 Pa. 48.

No damages other than actual damages proved can be charged against a defendant, if he had no knowledge of the character of the publication until after it was published, unless the defendant was guilty of negligence in the selection of his employees or reckless in the conduct of his paper. Scripps v. Reilly, 38 Mich. 18; Evening News Asso. v. Tryon, 42 Mich. 549, 36 Am. Rep. 450, 4 N. W. 267; Smith v. Ashley, 11 Met. 367, 45 Am. Dec. 216.

Where a defendant has published an inaccurate report of proceedings in a court of justice, reflecting on the character of the plaintiff, any evidence to show that he honestly intended to present a fair account of what took place, and had blundered through inadvertence solely, is admissible. Smith v. Scott, 2 Car. & K. 580.

*D. M. M. Collins* and *William W. Wiltbank*. for defendant in error.—An article is itself libelous, if it charges an offense violative of the act of Congress relating to personation and perjury, *viz.:* U. S. Rev. Stat. §§ 5435, 5392, U. S. Comp. Stat. 1901, pp. 3673, 3653.

The article also charges offenses under the statutes of Pennsylvania, *viz.:* Act March 31, 1860, § 104 (Purdon's Digest, 344, pl. 149) (stealing valuable documents); Act March 31, 1860, § 111 (Purdon's Digest, 347, pl. 164) (cheating by false pretenses).

The latter statute is similar to the 30 Geo. II. chap. 24.

In Rex v. Story, Russ. & R. C. C. 81, the prisoner obtained money from the keeper of a postoffice by assuming to be the person mentioned in a money order which he presented for payment; and this was held by the twelve judges a sufficient false pretense within the statute.

This was approved in Com. v. Hutchinson, 2 Pars. Sel. Eq. Cas. 309.

If an article is libelous in itself, the offense is aggravated by the later publication. Kean v. McLaughlin, 2 Serg. & R. 469; Wallis v. Mease, 3 Binn. 546; Eckart v. Wilson, 10 Serg. & R. 44.

That an article was copied from another paper is no defense. King v. Harvey, 2 Barn. & C. 257; Odgers, Libel & Slander, § 584; Bruce v. Reed, 14 W. N. C. 161.

Where actual ill will is shown the jury may give exemplary or vindictive damages. Townshend, Slander & Libel, § 290 and cases cited; Neeb v. Hope, 111 Pa. 145, 2 Cent. Rep. 71, 2 Atl. 568.

The record of the United States court was properly disregarded. Beside the sufficient reasons given by the court below, it was not competent, under the general issue, to give evidence of a charge different from that of the alleged libel. Carothers v. O'Brien, 29 Pittsb. L. J. 395.

PER CURIAM:

The points submitted were correctly answered by the learned judge. The evidence was fairly submitted and the law was correctly declared.

Judgment affirmed.