## AMERICAN PIANO CO. v. CUNNINGHAM PIANO CO.

(Circuit Court of Appeals, Third Circuit. November 14, 1924.)

No. 3199.

**Libel and slander ⟷123(2)—Construction of publication not libelous per se, but susceptible of libelous meaning, for jury.**

Where an alleged libelous publication is not libelous per se, yet in the light of extrinsic facts the words are susceptible of being construed as having a defamatory meaning, whether they have such import is a question for the jury.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Charles L. McKeehan, Judge.

Action at law by the American Piano Company against the Cunningham Piano Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Roland S. Morris and Duane, Morris & Heckscher, all of Philadelphia, Pa., for plaintiff in error.

James Gay Gordon and Joseph H. Taulane, both of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below the American Piano Company, a corporate citizen of New Jersey, brought an action for libel against the Cunningham Piano Company, a corporate citizen of Pennsylvania. The alleged libel consisted of an advertisement published by the defendant, and printed in the margin.[1] The case was tried before a jury, and at the close of the testimony on behalf of the plaintiff the trial court, on motion of the defendant, granted a compulsory nonsuit, saying:

"The libel charged in this case is that, in making and selling the Knabe and Chickering pianos, the plaintiff is acting fraudulently, and that the fraud consists in holding out to the public that Knabe and Chickering pianos are of a very superior grade and quality, whereas, in fact, the plaintiff is imposing on the public under the names 'Chickering' and 'Knabe,' inferior instruments. That is the libel charged, and I think that this article is not capable of such a construction, and that therefore there is no question to submit to a jury."

After careful consideration, we are of opinion the case should have been submitted to the jury. As the case goes back for retrial, we deem it proper to refrain from here discussing the advertisement, and stating the reasons why its construction was the province of a jury, and confine ourselves to stating our conclusion, only adding that we think the present case is one that falls within the middle ground referred to in the opinion of the Supreme Court in Baker v. Warner, 231 U. S. 588, 34 S. Ct. 175, 58 L. Ed. 384, where that court said:

"It was for the jury, and not for the court, to determine the meaning of ambiguous language in the published article. Where words are libelous per se, the judge can so instruct the jury, leaving to them only the determination of the amount of damages. Where the words are not libelous per se, and, in the light of the extrinsic facts averred could not possibly be construed to have a defamatory meaning, the judge can dismiss the declaration on demurrer, or, during the trial, may withdraw the case from the jury. But there is a middle ground where, though the words are not libelous per se, yet, in the light of the extrinsic facts averred, they are susceptible of being construed as having a defamatory meaning. Whether they have such import is a question of fact. In that class of cases the jury must not only determine the existence of the extrinsic circumstances, which it is alleged bring to light the concealed meaning, but they must also determine whether those facts, when coupled with the words, make the publication libelous."

The judgment below is therefore reversed, and the record remanded, with instructions to reinstate the case for further procedure.

---

[1] The Pianos of Yesterday and of To-Day.

Way back in the early days of Piano construction and invention, there started several ambitious manufacturers, whose intentions and purposes were honest, but whose commercial and business abilities lacked the necessary training.

In those days, Boston contributed its share; Baltimore was likewise prominent in the eyes of the artist and musician, as was also New York. Notably among the leading pianos in the musical and artistic world were the Weber, of New York; Chickering, of Boston, and the Knabe, of Baltimore. There were in our own city—the Albrecht, Prestien & Berwyn and the Schomacker.

All of the above-mentioned firms, in due course, passed into the hands of receivers or went voluntarily out of business or had been purchased by commercial houses, where their identity (except for advertising purposes) was nothing more than the name.

The great industries of the country have frequently changed hands. The mammoth steel concerns of Pittsburgh are comparatively of recent date. Constant changes and inventions in an article comprising over 3,600 pieces, such as a piano, require personal attention and up-to-date methods.

For over a quarter of a century we have been making the famous Cunningham Pianos right here in Philadelphia. We have seen piano manufacturers and dealers come and go, but we have stuck to our policy of making the best piano possible and selling it to the home direct—pricing them as only manufacturers can.

The Cunningham of to-day is the Cunningham of a quarter of a century ago with all the improvements and musical effectiveness that modern efforts can offer.

**It Pays to Think.**