**Felix BOCCHICCHIO**

v.

**CURTIS PUBLISHING CO.**

Civ. A. No. 22905.

United States District Court
E. D. Pennsylvania.

March 9, 1962.

Thomas D. McBride and Michael von Moschzisker, Philadelphia, Pa., for plaintiff.

Philip H. Strubing, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

This libel action is now before the court on plaintiff's MOTION FOR NEW TRIAL filed after judgment was entered for the defendant on the special verdict of the jury.[1] Plaintiff contended that the fourth (Exhibit P–1) in a series of six articles (Exhibits D–1A to D–1E and P–1) by Rocky Marciano (world heavyweight boxing champion from 9/23/52 until his retirement undefeated on 4/27/56), as told to two reporters (Gross and Hirshberg) and published in defendant's magazine (The Saturday Evening Post), contained defamatory material which was libelous, per se. This fourth article, published October 6, 1956, had as its title "DIRTY WORK AT RINGSIDE" and as its sub-title "For the first time, Rocky discloses the startling truth about his title fight with Jersey Joe Walcott." In the article itself, the following wording appears:

"* * * it seemed like everything in the world was done to steal it from me before I even got it.

* * * * *

"* * * I was almost blinded for three rounds of the fight.

* * * * *

"* * * here's the truth, as it was told to me by the policeman who found out. I was blinded by capsicum Vaseline. According to the policeman, Walcott's manager, Felix Bocchicchio, rubbed it on Joe's gloves and on the upper part of his body.

I. The jury answered the first six of nine special questions submitted to them as follows (Document No. 24):

"1. Did the parts of the article about which plaintiff complains, or any of them, defame plaintiff?

"Yes or No <u>No</u>

"2. Were the parts of the article about which plaintiff complains all substantially true?

"Yes or No <u>Yes</u>

"3. Was publication of the article motivated by actual malice on the part of the defendant?

"Yes or No <u>No</u>

"4. Did the defendant believe in the truth of the matter which plaintiff alleges to be defamatory?

"Yes or No <u>Yes</u>

"5. Did the defendant have reasonable grounds for believing to be true the matter which plaintiff alleges to be defamatory?

"Yes or No <u>Yes</u>

"6. For whom is your verdict? (Answer Plaintiff OR Defendant. If your answer is 'plaintiff', then answer the remaining questions. If your answer is 'defendant,' do not answer the remaining questions.)

"<u>Defendant</u>"

From the sixth round through the eigth, every time Walcott jabbed me and his glove came in contact with my eyes, or every time I clinched with him and got my face against his body, my eyes would smart."[2]

I. *Alleged Errors in Rulings on Evidence*

A. The identity of Melchiore's informer was privileged (par. 2 of Motion For New Trial).

On the issue of conditional privilege (N.T. 100), defendant produced evidence during its case that Melchiore, a Philadelphia police officer, had told Marciano in 1953 at Grossinger's that plaintiff has been given capsicum vaseline for the first Walcott-Marciano fight of September 1952 (N.T. 102). Marciano never learned the name of the informer (N.T. 139). Melchiore refused to give Hirshberg the name of the person from whom Melchiore is supposed to have received his information (N.T. 405, 406). Editor Paxton was furnished the tape of the Hirschberg-Melchiore interview and heard it prior to publication (N.T. 276). As part of his rebuttal, plaintiff's counsel called Melchiore (now a county detective, assigned to the District Attorney's office—see N.T. 368), and stated that the following question was being asked the witness on the issue of truth (N.T. 374–6):

"Now, at the time of the visit to Mr. Marciano at Grossinger's, what information did you possess, if any, as to what caused the impairment to Mr. Marciano's vision?" (N.T. 371, 374, 376).

Melchiore answered (N.T. 376 & 377):

"I had received some information that capsicum Vaseline was used on the gloves of Jersey Joe Walcott.

\* \* \* \* \*

" \* \* \* the complete information I had was what was given to

Felix Bocchicchio by Blinky Palermo, capsicum Vaseline, and it was put on the gloves of Jersey Joe Walcott."

After stating that this information came "from an informant of mine" (N.T. 377), Melchiore was asked by plaintiff's counsel (N.T. 379–380), "Who told it to you?" The witness stated "I do not wish to answer"[3] and was questioned by counsel and the court outside the presence of the jury in order to determine whether he could be persuaded to answer the question voluntarily or should be required to answer it. The record discloses that Melchiore had consistently refused to answer this question, when asked by Hirshberg and when his deposition (Document No. 20) was taken in this case, since "in police lines we never name our informers" (N.T. 406). In answers to questioning by the trial judge, the witness stated that he felt he should not answer for these reasons:

"A Because I have—I have other informants, also, which is a very important part of my life of a police officer, or any law-enforcement officer. Informants are very important.

"Q That is right. I understand that.

"A And you could just about say we are only as good as our information is outside and if I reveal the name of one, there is not one of them out there will ever trust me again in other information. I have informers throughout the City of Philadelphia, and if I reveal the name of one, I know I am lost to everything. My job as a law-enforcement officer would be very hard.

"Q Well, now, is this particular man this important to you when, if I ordered you to do it, how could he reasonably expect you not to?

---

2. The wording of the article relied on by plaintiff appears at pp. 10 and 11 of his brief (Document No. 32).

3. Since the defendant's objection to this question was overruled (N.T. 380), there is no basis for par. 1 of the Motion For New Trial (Document No. 28).

"A I don't know. It is a hard thing when a man tells you in trust and that trust is taken away.[4]

Plaintiff's counsel then questioned the witness as follows (N.T. 391–3):

"Q Now, I am not going to ask you at this point—

\* \* \* \* \*

"I am not going to ask you his name, but to establish who he is, he is a police informer?

"A Yes, to me, yes.

"Q That is, he informs to you on the cases of crime and investigations that you are making?

"A Yes.

"Q He is not—and I am not casting any slur upon him—but he is not among the people who would be recognized as a respectable man; is that right?

"A No. He is not.

"Q \* \* \* Now, were you making this investigation on behalf of your employer, the City of Philadelphia?

\* \* \* \* \*

"THE WITNESS: I attempted to make this investigation for the City of Philadelphia. After the information I received from the informer, I attempted to pursue it further, and at that time I couldn't come up with any other information."[5]

After both counsel had concluded their questioning of the witness (N.T. 397–8), the trial judge stated that he was concerned with the possible application of the privilege stated in § 2334(f) of the 1961 Edition of Wigmore on Evidence and adjourned the trial to consider the matter (N.T. 398–9).

On the resumption of the trial, the witness made clear that the informer [6] had given him the information in his capacity as a Philadelphia police officer "as he has done all the way through" and the trial judge sustained the witness' objection [7] to answering the question (N.T. 400).

■ The above quotations make clear that a Philadelphia police officer, not represented by counsel, claimed the privilege for communications by informers to the Government. See Mitchell v. Roma, 265 F.2d 633, 635 (3rd Cir. 1959); 8 Wigmore, Evidence, § 2374F, p. 761–2 (McNaughton Rev. 1961).[8] The United States Court of Appeals for the Third

---

4. The trial judge continued to question the witness, saying:
"\* \* \* I am just wondering whether this particular informer is all that important to you. If he is, I will get out the books and look the matter up.
\* \* \*
"Q. What do you think? Do you still feel that you—
"A I still feel I would like to protect the man, Your Honor. The man has helped me in many other cases."

5. The witness also testified as follows at N.T. 395–6:
"\* \* \* In any case where we hear there is a crime or a possible crime, we have worked on it many a times, and if we could come up with anything we would discuss it with our superiors, and they tell you just what to do from then on."

6. The witness also testified that the informer was not under arrest when the information, which he had learned, was given (N.T. 400–401).

7. Plaintiff has cited no authority in support of his contention (p. 4 of his brief, Document No. 32) that an authorized representative of the city must appear to claim the privilege on the evidence in this record. Melchiore testified that he was acting in accordance with police policy in not disclosing the name of his informer (N.T. 389 & 406). In Elrod v. Moss, 278 F. 123, 127 (4th Cir. 1921), the court approved a ruling of the trial judge that a sheriff need not disclose the source of his information that plaintiff was transporting liquor. Wigmore states (p. 767 of Vol. 8, supra) that "The privilege applies to communications to such officers only as have a *responsibility or duty* to investigate or to prevent public wrongs, \* \* \*."

8. In United States v. Kohler Co., 9 F.R.D. 289 (E.D.Pa.1949), Senior Judge Kirkpatrick adopted the view of Wigmore.

Circuit has stated in Mitchell v. Roma, supra, at pages 635–636:

"The courts should be solicitous to protect against disclosures of the identity of informers. (Citing case.)

"The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of violations of law to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation. (Citing case.)

"However, the privilege must give way where the disclosure of an informer's identity * * * is essential to a fair determination of a cause, * * *. As it is put in the Model Code and Uniform Rules, supra, the privilege exists unless the judge finds that the disclosure of the informer's identity is essential to assure a fair determination of the issues."

The information related to Melchiore could only be relevant on the issues of truth and conditional privilege and the identity of the source of the information, as opposed to its accuracy, was not relevant on either issue, nor was the disclosure of this identity on the third day of the trial "essential to a fair determination of the issues."

█ As stated above, Melchiore disclosed the identity of the person (Blinky Palermo) whom it was alleged gave the vaseline to plaintiff. Also, the deposition of Melchiore had been taken by plaintiff on September 20, 1957 (more than four years before the trial) and he had stated that he "couldn't reveal" the

source of his information as it was "police information" (pp. 17–8 and 22 of Document No. 20 and N.T. 406). Plaintiff cannot fail to ask for an order requiring such disclosure, either during discovery or at the pre-trial conference (see Document No. 15), and then claim that it is essential to a fair determination of the case to permit him to secure the identity of such an informer during the rebuttal portion of a trial (on the afternoon of the day before both parties rested).

The Federal Courts have consistently indicated that the strength of this privilege is greater in civil cases such as this than in criminal cases, such as Roviaro v. United States, 353 U.S. 53 (1957), and cases cited in that case at pp. 60–62, 77 S.Ct. 623, 1 L.Ed.2d 639 relied on by plaintiff, where the informer had been a participant in the criminal act. See United States v. Carey, 272 F.2d 492, 493 (5th Cir. 1959); Mitchell v. Roma, supra; cf. Miller v. United States, 273 F.2d 279, 281 (5th Cir. 1959);[9] Vogel v. Gruaz, 110 U.S. 311, 316, 4 S.Ct. 12, 28 L.Ed. 158 (1884).

Under the facts in this record, the ruling of the trial judge in sustaining the objection of the witness to answering the question was justified under the above-mentioned privilege.

B. On the record in this case, there was no error in admitting for impeachment purposes plaintiff's conviction for a felony without requiring defendant to ask plaintiff the particular felony involved (pars. 3 & 8 of Motion For New Trial).

██ The rule in this court and in this Circuit is that the sentence of conviction of a witness, whether or not a

---

9. In this case, the court said at page 281: "Here we are dealing with an individual who, knowing that someone has committed or is about to commit a crime, communicates that knowledge to the police who, acting independently, go to the scene and procure evidence of the crime.

We are not dealing with one who was an active participant in the crime nor with one whose presence gave the 'atmosphere of confidence' during the critical moments and who would have been able to testify directly about the very transaction constituting the crime."

party, for a felony may be shown for impeachment. See United States v. Montgomery, 126 F.2d 151, 155 (3rd Cir. 1942); National Labor Relations Board v. Baldwin Locomotive Works, 128 F.2d 39, 46 (3rd Cir. 1942); Masters v. Commissioner of Internal Revenue, 243 F.2d 335, 338 (3rd Cir. 1957); United States v. Ross, D.C., 203 F.Supp. 100; see, also, Henderson v. United States, 202 F.2d 400, 405 (6th Cir. 1953), rehearing den. 204 F.2d 126 (6th Cir. 1953).

When the court ruled, in the absence of the jury, that the defendant's counsel could ask plaintiff if he had been convicted of a felony in the United States District Court for the District of New Jersey (N.T. 521),[10] counsel for plaintiff objected on the ground that counsel for defendant should be required to show the felony involved,[11] even though the court pointed out that counsel for plaintiff could "bring that out on redirect" (N.T. 522).

Arnold v. United States, 94 F.2d 499, 506 (10th Cir. 1938), relied on by plaintiff, is significantly different from the situation presented by this record, since in that case counsel for defendant was not permitted to bring out on cross-examination the exact crime for which the defendant had been convicted so that the jury could weigh this information in evaluating the testimony of the defendant. This opportunity was specifically granted to counsel for plaintiff in this case (N.T. 522), as stated above. In fact, the plaintiff was asked by his counsel, on redirect examination, whether this offense involved "anything to do with the fight business, the fight sport" and answered "no, sir" (N.T. 527).

C. There was no reversible **error in** receiving Exhibits D–4, D–5 **and** D–7 to 12 into evidence on **the** limited basis that they were only to be considered in mitigation of the damages and of harm resulting to plaintiff's reputation from the defendant's publication if the jury found that "the public reading those articles would" relate them to plaintiff (N.T. 681) (par. 6 of Motion For New Trial).

The jury was carefully instructed on at least two occasions that these exhibits, which were placed in a separate folder (N.T. 579 and 593), were only to be considered on the question of damages if the jury got to that point in its deliberations (N.T. 594–5 and 680). It has been consistently held that it will not be presumed that the jury disregards the instructions given to them by the trial judge. Baltimore & O. R. Co. v. Felgenbauer, 168 F.2d 12, 17 (8th Cir. 1948); Crockett Engineering Co. v. Ehret Magnesia Mfg. Co., 81 U.S.App.D.C. 159, 156 F.2d 817, 820 (D.C.Cir. 1946); Husky Refining Co. v. Barnes, 119 F.2d 715, 717, 134 A.L.R. 1221 (9th Cir. 1941). Since the jury never considered the issues of damages at all (see answer to question 6 in footnote 1), they did not consider these exhibits so that their receipt in evidence is no ground for a new trial. F.R.Civ.P. rule 61, 28 U.S.C.A. See Burch v. Reading Company, 140 F. Supp. 136, 147 (E.D.Pa.1956), aff'd 240 F.2d 574 (3rd Cir. 1957), cert. den. 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914 (1957).

Even if the above conclusion is in error, the applicable cases hold that they

---

10. Actually, the trial judge was apparently more favorable to the plaintiff in his rulings on this point than at least two Federal appellate courts have been, since he refused to permit defendant to show separate sentences of plaintiff on convictions of pandering and of breaking and escaping from prison where Governors of Pennsylvania had issued Charters of Pardon for such offenses (N.T. 516–521). See Vedin v. McConnell, 22 F.2d 753, 754 (9th Cir. 1927); Richards v. United

States, 89 U.S.App.D.C. 354, 192 F.2d 602, 606, 30 A.L.R.2d 880 (D.C.Cir. 1951).

11. Counsel for plaintiff made the following statement at N.T. 522:
"MR. McBRIDE: All right, we are not going to bring it out. So, if you are just going to let him ask about a felony, without asking what the felony is, then we object to it, especially on that ground. We are not going to bring it out."

were properly admitted into evidence for the limited purpose of possible mitigation of damages. See Mengel v. Reading Eagle Co., 241 Pa. 367, 373–374, 88 A. 660 (1913); Minesinger v. Kerr, 9 Pa. 312, 313–314 (1848); Regensperger v. Kiefer, 4 Sadler 541, 7 A. 724, 726 (Sup. Ct. of Pa. 1887); cf. Hartmann v. American News Co., 171 F.2d 581, 586 (7th Cir. 1948);[12] Folsom v. Dell Publishing Company, 131 F.Supp. 464, 465 (S.D. N.Y.1955).

## II. *Alleged Errors in the Charge*

A. There was no reversible error in submitting the defamatory nature of the publication to the jury, particularly in view of the jury's answer to questions 2 to 5, incl. (par. 4 of Motion For New Trial).

Both the Pennsylvania cases[13] and the Federal cases[14] binding on this court have held that, under Pennsylvania law, it is for the jury to determine whether a communication, capable of a defamatory meaning, was so understood by its recipient. See Restatement of Torts, § 614. The plaintiff overlooks the testimony of Mr. Klein, member of the Pennsylvania State Athletic Commission, called by plaintiff (N.T. 434), that boxing was at "a low ebb" in the early nineteen-fifties, there were individuals connected with boxing whose interest in it "was not in the best interest of the sport" and "the boxing programs on television had apparently alliances with individuals * * * who were not of good repute * * *" (N.T. 451–3)[15] and the testimony of plaintiff himself that he only acted as manager for one or two fighters, who never had a fight, after Walcott retired in 1953 (N.T. 511–2). The jury may have found, among other things, from the evidence that the readers of defendant's publication in October 1956 would not reasonably consider[16] the article as tending to prejudice or blacken the reputation of a person such as plaintiff, who was a manager of professional fighters in the early nineteen-fifties and had gone into the motel business sometime prior to October 1956 (N.T. 510). Comment c of § 614 of the Restatement of Torts contains this language:

"In determining the defamatory character of language, the meaning of which is clear or otherwise determined, the social station of the par-

12. Under F.R.Civ.P. rule 43, these Exhibits are admissible if they would be in a Pennsylvania court, irrespective of the rule in the Hartmann case, relied on by plaintiff at pp. 14–15 of his brief (Document No. 32).

13. Bausewine v. Norristown Herald, 351 Pa. 634, 643, 41 A.2d 736 (1945); Montgomery v. Dennison, 363 Pa. 255, 260, 69 A.2d 520 (1949); McAndrew v. Scranton Repub. Pub. Co., 165 Pa.Super. 276, 279, 67 A.2d 730 (1949); Solosko v. Paxton, 4 Pa.Dist. & Co.2d 240, 244 (C. P. Somerset County 1954), aff'd 383 Pa. 419, 119 A.2d 230 (1956). In the Bausewine case, supra, the court said 351 Pa. at p. 643, 41 A.2d at p. 741:
"It was for the court to say, as a matter of law, whether the writings in suit were capable of a libelous meaning. If they were, it then became the jury's duty to determine whether they had such meaning in fact."
In McAndrew, supra, the court quoted with approval, 165 Pa.Super. at page 279, 67 A.2d at page 731, § 614(2) of the Restatement of Torts, which provides: "The

jury determines whether a communication, capable of a defamatory meaning, was so understood by its recipient." The quotation from American Piano Co. v. Cunningham Piano Co., 2 F.2d 463, 464 (3rd Cir. 1924), which plaintiff has included at page 9 of his brief (Document No. 32) is not pertinent in view of the subsequent adoption of the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188 (1938), which makes Pennsylvania law controlling, since the quotation cited relied on an opinion of the Supreme Court of the United States.

14. MacRae v. Afro-American Company, 172 F.Supp. 184, 186–187 (E.D.Pa.1959) (which specifically refers to § 614, Restatement of Torts) aff'd 274 F.2d 287 (3rd Cir. 1960). See Arvey Corporation v. Peterson, 178 F.Supp. 132, 135 (E.D. Pa.1959).

15. This testimony was referred to by defendant's counsel in his closing argument (N.T. 610ff.)

16. See Restatement of Torts, § 563.

ties in the community, the current standards of moral and social conduct prevalent therein, and the business, profession, or calling of the parties are important factors. Thus, an imputation may be defamatory as applied to one person at a given time and place, although it would not be derogatory of another person at a different time or in a different place."

 Even if the trial judge should have instructed the jury that the article was defamatory, as contended by plaintiff the answer to question 2 (as well as the answers to questions 3 to 5) made this error harmless. See F.R.Civ.P. rule 61.

B. Submission of the defense of truth to the jury was proper (par. 5 of Motion For New Trial).

In view of the references to the record under A above (page 12) and at pages 9 and 10 of defendant's brief (Document No. 33), it is unnecessary to review the evidence here.[17]

In further support of the principle of Smith v. Bell Telephone Co. of Pa., 397 Pa. 134, 138–139, 153 A.2d 477 (1959), which is cited at page 10 of defendant's brief (Document No. 33), that a jury finding in favor of a party having the burden of proof may be based on circumstantial evidence which does not exclude all other possibilities, see United States v. Giuliano, 263 F.2d 582, 584 (3rd Cir. 1959), stating the following federal rule as applicable even in criminal cases:

" * * * it is now well settled that the evidence need not be inconsistent with every conclusion save that of guilt, provided it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt."

The Pennsylvania law provides that proof "to the satisfaction of the jury * * * that the publication is substantially true" is "an adequate and complete defense." See 12 P.S. § 1582.

One objection was made to the portion of the charge covering this defense (N.T. 687, 690, 694 & 695), as follows (N.T. 687):

" * * * I object to Your Honor stating that they do not have to prove that it was Capsicum vaseline, on the ground that it is true that all that they need show is substantial truth, but that substantial truth must be based upon some evidence in the case, and the only evidence is that the substance was Capsicum vaseline. There is no evidence of any other substance."

The charge contained this language (N.T. 660 & 666):

"You must determine whether or not you would consider the article is substantially true; that is, if any such burning substance (it would not have to be exactly capsicum Vaseline, if you find that another substantially similar substance was used)[18] made the article substantially true; in other words, the test is not exact truth, but substantial truth, as I will define it to you later. * * *

---

17. The closing argument made to the jury by defendant's counsel on the defense of truth is at N.T. 609–620. Plaintiff's closing argument on the issue of truth is at N.T. 601–2, 627–632, 635–6 and 638–649. The jury had the right to reject plaintiff's evidence. Plaintiff himself and his witness Klein (member of the Pennsylvania Athletic Commission) testified that it was customary for fighters to use vaseline on their faces and other portions of their bodies (N.T. 448 & 511–2). It is quite possible that such evidence, together with similar evidence of witnesses called by defendant, lead the jury to disregard the testimony of plaintiff's expert that he could find no evidence of vaseline on the gloves used by Walcott in the September 1952 fight when he examined these gloves in April 1961 (N.T. 564, 567–570). This witness testified that he definitely would have found vaseline on the gloves by use of his method at the time of his examination, even though the capsicum "might change and disappear" (N.T. 568), and he found no such vaseline in his examination (N.T. 570–1).

18. The insertion of the language in the parentheses was made necessary by the

\* \* \* \* \* \*

"It is not necessary that the defendant prove the literal truth of the precise statement made. Slight inaccuracies of expression are immaterial, provided that the defamatory charge, if you find it to be defamatory, was true in substance. However, the substantial truth of only a part of a defamatory charge is insufficient, if another part of it is false. In other words, it must all be substantially true."

The foregoing language was in accordance with 12 P.S. § 1582, Restatement of Torts, § 582, comment (e), and Kilian v. Doubleday & Co., Inc., 367 Pa. 117, 123, 79 A.2d 657 (1951).

■ In view of the testimony of the doctor (N.T. 155–6) and other witnesses (N.T. 82 & 233) that some foreign substance caused irritation to, or burning in, Marciano's eyes, as well as the other evidence referred to under the first paragraph of this section B, the above language was appropriate and question 2 was properly submitted to the jury.

C. The portions of the charge on the issue of conditional privilege, including the rulings of the trial judge on the related points for charge, did not contain reversible error (pars. 7 and 9–11 of Motion For New Trial).

■ In view of the terms of F.R.Civ. P. rule 61 and the jury's answers to questions 1 and 2, it is not necessary to discuss in detail the Pennsylvania law governing qualified privilege.[19] However, the legal basis for the rulings of the court on this subject are summarized as follows:

1. On this record, the court made the initial determination that this publication, even though found to be libelous, was made on a conditionally privileged occasion, since the Series of Articles were published within six months of the retirement of a world champion, heavyweight, United States boxer while still undefeated, and the exposure of possible improper conduct in the national sports field was, hence, appropriate at that time as part of that series. See Restatement of Torts, §§ 619, 594 & 598, cf. § 596, Dempsky v. Double, 386 Pa. 542, 546–547, 126 A.2d 915 (1956), and other cases cited at page 17 of defendant's brief (Document No. 33). The argument of plaintiff appears at pages 20–23 of his brief (Document No. 32). The wording of the charge in the last paragraph at N.T. 670, which continues on N.T. 671, is based on the Scope Note at pp. 240 and 241 of Restatement of Torts, Topic 3.

2. The portion of the charge concerning possible abuse of the conditionally privileged occasion (N.T. 672–3) is based on the Restatement of Torts, §§ 600 and 601, and such Pennsylvania cases as Bausewine v. Norristown Herald, supra, 351 Pa. at 644–646, 41 A.2d 736, Montgomery v. Dennison, supra, and Dempsky v. Double, supra, 386 Pa. at 546–547, 126 A.2d 915.

3. The burden of proving the abuse of the conditionally privileged occasion was placed on plaintiff in accordance with 12 P.S. § 1584a(1) (g). There appears to be no definitive Pennsylvania case on the point since the enactment of the above Act of August 21, 1953, P.L. 1291. See pp. 20–25 of plaintiff's brief (Document No. 32) and pp. 19–21 of defendant's brief (Document No. 33).

4. Since the charge, when read as a whole, correctly covered the applicable law on the issue of conditional privilege

---

statement of counsel for plaintiff in his closing argument that defendant has the burden of proving that plaintiff caused blindness "by capsicum Vaseline, and if it was caused by anything else, \* \* \* anything except capsicum Vaseline applied by Felix Bocchicchio, shows that the Post didn't tell the truth, because

that is what they said." (N.T. 627–8).

19. It is also noted that no objections were made at the conclusion of the charge to any of the matters covered in the paragraphs numbered 1 and 2 below (N.T. 686–9). See F.R.Civ.P. rule 51.

(see 1-3 above), there was no necessity for the trial judge to read all of plaintiff's points for charge on this issue (pars. 10-16 of Document No. 23). See Gerhart v. Henry Disston and Sons, Inc., 290 F.2d 778, 795 (3rd Cir. 1961), where the court said:

"It is not prejudicial error to refuse to give a requested instruction even though it be an accurate statement of the law, if the issues have been fairly and correctly covered in the general instructions given."[20]

In ruling on paragraphs 11-15,[21] the trial judge made clear that he was not reading them because of the statements of fact, which were matters "for argument," contained in them and that, as far as he could tell, he agreed with the statements of law contained in them (N.T. 592-3).

Reading the second sentence of paragraph 16 of plaintiff's Points for Charge would have required defining the significance of justifying prosecution for an alleged crime, which would have had a tendency to confuse the jury (see page 19 of Document No. 32 for plaintiff's argument). The requirement that defendant have reasonable grounds for believing the publication to be true was explained to the jury at N.T. 672-3. See § 601 of the Restatement of Torts; Montgomery v. Dennison, supra, 363 Pa. at 264, 69 A.2d 520; Sacchetti v. Fehr, 217 Pa. 475, 476-477, 66 A. 742 (1907).

5. The charge, when read as a whole, did not instruct the jury that "defendant had a greater privilege to publish than that accorded to other individuals." See par. 7 of Motion For New Trial (Document No. 28).

The fair reading of the following paragraph and the charge as a whole is that a publisher may have a privilege to publish, for a relatively large segment of the public, material which an individual, who is not a publisher, may not have a privilege to say because no public policy would justify such individual gossip (N.T. 669):

"The word 'privilege' which I have heretofore used means a status denoting the fact that conduct which, under ordinary circumstances, would subject a publisher to liability, under particular circumstances does not subject him thereto. In other words, what you or I might say on the street might subject us to liability, but where you have got a matter of public concern, such as the sports world, and you have got an important fight like this, a. publisher has a privilege which we as individuals may not have. A privilege, in general, is based on the fact that the exercise is, by law, deemed necessary for the protection of some interest of the public which is of such importance as to justify the harm caused or threatened by its exercise or the fact that the publisher is performing a function for the proper performance of which freedom of action is essential."

In emphasizing in the second sentence the words "a publisher has a privilege which we as individuals *may* not have," plain-

---

20. Although plaintiff objects to the modification of the last two sentences of paragraph 10 of his Points for Charge (Document No. 23), the issues raised by these two sentences were made clear to the jury on at least two occasions during the charge (N.T. 672-4 and 676), provided that paragraph 3 above correctly states the law on the burden of proof.

21. The above-mentioned references to the record at pp. 9 and 10 (at least three witnesses saw plaintiff rubbing Walcott's gloves in the kinescope of the fight—N.T. 92-93, 237 and 312—and the doctor tes-

tified Marciano's irritated and swollen eyes were caused by a foreign substance which could have been capsicum ointment —N.T. 155 & 163) of defendant's brief (Document No. 33) make clear that the statement in paragraph 15 of plaintiff's Point for Charge that "the only evidence in this case allegedly linking Bocchicchio to capsicum vaseline is the evidence that Officer Melchiore told Marciano that an unnamed informant had said that he learned that" was inaccurate and, hence, this paragraph was properly rejected (see page 19 of Document No. 32 for plaintiff's argument).

tiff overlooks the words "say on the street" in that sentence and the *underlined* word "may," as well as the other language at N.T. 668–671.

*ORDER*

And now, March 9, 1962, it is ordered that plaintiff's motion for new trial (Document No. 28) is denied.