**Herbert HARRIS, William McCoy, Richard Martin, Charles McClellan, Wylie Milner, A. Welly, Fred Jackson, R. Byrd, Columbus Oliny, Joe A. Fliks, A. B. Johnson, Johns Crelkin, Yakooh Habah, James Farthing, George Baskerville, George Cheets, Belton Hammett, Abdullah Ahmad Bey, James Rich, Harry Ford, Columbus Lowry, Burwell Harris, Herbert McCoy, W. Budd, Bernie Quaos, Charles Duera, Cecil Shaw, Wilkie Johnson, Wright Williams, Joseph Colter, and Fred Bell**

**v.**

**The INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL NO. 1291**

**and**

**Richard L. Askew, President of Local No. 1291.**

**Civ. A. No. 31377.**

United States District Court
E. D. Pennsylvania.

July 16, 1962.

Harry Lore, Philadelphia, Pa., for plaintiffs.

Abraham E. Freedman, Philadelphia, Pa., for defendants.

VAN DUSEN, District Judge.

The history and background of this case are covered in the Opinion of May 15, 1962, 205 F.Supp. 45 (Document No. 5), denying the Motion For Preliminary Injunction filed May 2, 1962 (Document No. 2). The above Renewed Motion (Document No. 6) is based on allegations that:

(a) because of a threat alleged to have been made at a meeting held the evening of May 15 and "the aura of unfairness and violence which permeates the meetings of * * * Local 1291, it is impossible for" motions to be placed "upon the floor in such a manner that the membership may vote upon them without fear of intimidation and reprisal" (paragraph 4); and

(b) "no remedies exist within the union to protect the plaintiffs from reprisal, threats of violence or likelihood of physical harm for taking positions inconsistent with, and opposed to, the existing leadership of Local No. 1291" (paragraph 5).

Since the plaintiffs have not sustained their burden of proof on either of these allegations, the above Renewed Motion will be denied.

The only specific threat of violence relied on in the above Renewed Motion is an alleged statement made at the May 15 meeting by a business agent of the union (Talmadge) that the plaintiff Herbert Harris, who had just made a motion, "might as well leave the waterfront" if the motion passed "because I am going

to get rid of you so that the rest of the union won't be worried by you any more."

Although Mr. Kalai testified for plaintiffs to such language and that it was stated as a threat, he had no personal knowledge of a person "being dumped in the river" or "having his head blown off" on the Philadelphia waterfront, but he said that he had heard of such circumstances without specifying where or when. Also, Mr. Johnson testified for plaintiffs that Talmadge threatened "to get rid of" Harris, although he stated that Talmadge left the stage and took a seat at the back of the hall, thirty to forty feet behind Harris and not "immediately behind Harris," as Johnson had stated in his sworn affidavit attached to the Motion (Document No. 6).

Talmadge stated that he was upset by the motion and stated to the meeting that if the motion was passed, the members might as well get rid of him as business agent. He also said that he would work to get rid of Harris (meaning getting rid of him as a member of the union by filing charges against him) if the motion was passed. He considered his statement as a conditional resignation by him and, for this reason, he went to the rear of the hall preparatory to leaving the meeting if the motion passed. The motion was defeated by an overwhelming vote. He had told Harris as early as 1957–1958 that his conduct was not for the best interest of the union.

At least three witnesses testified that their only recollection of Talmadge's statement was in accord with Talmadge's testimony (testimony of Askew, Moock and business agent Johnson).

The hearing judge is unable to accept the testimony of Herbert Harris for these reasons: [1]

1. His testimony that he had never been fired and the union had never interceded to get his job back was directly contradicted by a more reliable witness (his Lavino foreman, E. Kane), as well as by Talmadge. His testimony that he had never been in a meeting presided over by Mediator Murray in 1954 with Richard Neal was contradicted by reliable testimony.

2. His testimony as given was inconsistent.[2]

3. He did not testify accurately during the May hearings (see page 46 of Opinion of May 15, 1962, being Document No. 5).

4. He has been unsuccessfully opposed to the present union management for years and seems primarily interested in removing the present officers from their positions of authority.

5. He has been previously convicted of a felony. See Bocchicchio v. Curtis Publishing Co., 203 F.Supp. 403, 407–408 (E.D.Pa.1962), and cases there cited.

The plaintiffs have failed to sustain the burden of proving their allegation that there is an aura of unfairness and violence at the meetings. The hearing judge rejects the testimony of Hicks that Askew hit him first, rather than in self-defense, when Hicks disregarded the ruling of the presiding officer at the meeting of June 19 and forcibly seized the microphone, for these reasons:

1. His testimony was not careful and accurate. He testified positively on July 2, when first called to the stand, that "Turk" Kane said in a union meeting

1. Harris' reference to the actions of this court in Goldberg, Secretary of Labor, v. Local No. 1291, etc. (Misc. No. 2339) is explained by examination of the Clerk's file and briefs filed in that case.

2. For example, when first called to the stand, the clear implication of his testimony was that Talmadge's language and conduct at the May 15 meeting had constituted threats which had intimidated him to some degree, but when recalled on the last day of the hearing, he testified that Talmadge did not bother him. Also, his testimony indicated that several people had been indicted in the early 1950's, but later he admitted that only two persons had been indicted.

that the union lawyer had influence with the court and just as positively denied on July 3, when recalled to the stand, that Kane had made this statement in a union meeting.[3]

2. His testimony was not supported by other witnesses.

3. He has been convicted of at least four felonies between 1942 and 1955. See Bocchicchio v. Curtis Publishing Co., 203 F.Supp. 403, 407–408 (E.D.Pa.1962), and cases there cited.

Also, the undersigned does not believe that Congress expected the court to take action under the Landrum-Griffin Act on the basis of testimony first produced on rebuttal and not mentioned in the pleadings concerning alleged, indecorous language and threats used in a District Negotiating Meeting such as the testimony of Bey. Askew denied this testimony as to the alleged threats by him at the June District Negotiating Meeting in New York and defendants had no fair opportunity to answer this contention injected in the hearings on their last day.[4] Plaintiffs have not sustained their burden of proving that this incident discloses the use of threats by defendants at union meetings.

The record does not sustain the contention that the union meetings have been unfairly conducted. There have been several examples in both the May hearings and those held this month that the present leadership, particularly Askew as the presiding officer, has been fair to those who disagreed with it. The leadership abided by the desires of the membership concerning the central hiring point and the reading of all financial entries as part of the Treasurer's report, even though these views were not the same as their own. Askew ruled that Bey's removal from the negotiating committee could not be brought up at the June special meeting, even though Bey has consistently opposed his leadership.

As stated at pages 2 and 3 of the May 15 Opinion (Document No. 5), there are remedies available to plaintiffs by appeals within the union.

Much time at the July hearings was taken up with both parties using this court proceeding under the Landrum-Griffin Act as a forum to justify their activities and criticize their opponents before the union members present in court. Under the circumstances presented by this record (particularly the recognition by plaintiffs, through their leader Bey, that appeal procedures within the union are available to them),[4] this Motion will be dismissed with prejudice and the Motion For Summary Judgment (Document No. 3) will be listed on the September argument list.

3. Although the officials of Local 1291 may have boasted about the superiority of their lawyer, any implication that they stated that such lawyer had improper influence with the court has not been proven by the testimony at these hearings.

4. It is noted that Bey is fully aware of the procedures available to protect his rights, as he has an appeal pending in the District Council at this time.