February 14, 1979

## 79-14 MEMORANDUM OPINION FOR THE ASSISTANT DIRECTOR, LEGAL COUNSEL, FEDERAL BUREAU OF INVESTIGATION

### Assertion of State Secrets Privilege in Civil Litigation

This responds to your request for the views of this Office regarding two questions: (1) whether properly classified information qualifies for nondisclosure in civil litigation on the basis of the privilege for state secrets; and (2) whether a claim of privilege for state secrets may be asserted concurrently with other claims of privilege for the same information. Your Office states that these questions are particularly important in litigation where the parties seek information pertaining to the identity of informants.

The issue whether classified information satisfies the requirements of the state secrets privilege raises two different but related questions: The first is whether classified material is protected by the state secrets privilege—*i.e.,* "matters relating to international relations, military affairs, and public security." 8 Wigmore, *Evidence* § 2378, at 794 (McNaughton rev. 1961). *See also* 8 Wright and Miller, *Federal Practice and Procedure* § 2019, at 158 (1970). Even when the information falls within these categories, however, it does not necessarily qualify for the state secrets privilege; its disclosure must also pose some risk of harming the national security. As the Supreme Court stated in *United States* v. *Reynolds,* 345 U.S. 1, 10 (1953), the Government must

> satisfy the court, from all circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged.

The lower courts have also required the Government to demonstrate a reasonable danger that the disclosure of such information would be detrimental to the national security. *See, e.g., Jabara* v. *Kelley,* 75 F.R.D. 475, 483, 489, 492 (E.D. Mich. 1977); *Kinoy* v. *Mitchell,* 57 F.R.D. 1, 9 (S.D.N.Y. 1975). *See also* 8 Wigmore, *Evidence* § 2212a at 159 (McNaughton rev. 1961).

In our view, properly classified material would satisfy these two separate criteria. Section 1-301 of Executive Order No. 12065 prohibits the classification of information unless it concerns:

(a) military plans, weapons, or operations;

(b) foreign government information;

(c) intelligence activities, sources or methods;

(d) foreign relations or foreign activities of the United States;

(e) scientific, technological, or economic matters relating to the national security;

(f) United States Government programs for safeguarding nuclear materials or facilities; or

(g) other categories of information which are related to national security and which require protection against unauthorized disclosure as determined by the President, by a person designated by the President pursuant to Section 1-201, or by an agency head.[1]

Since all these matters appear to be encompassed by the state secrets privilege—material relating to military affairs, international relations, or the national security—it seems that the first requirement of the state secrets privilege is met.

Properly classified information would also appear to meet the second requirement of the state secrets privilege—*i.e.*, whether there is a reasonable danger that disclosure would be detrimental to the national security. Section 1-302 of the order provides that, even though information may satisfy the criteria set forth in section 1-301, it may not be classified unless "unauthorized disclosure reasonably could be expected to cause at least identifiable damage to the national security." If this determination is properly made, the information would, in our view, satisfy the criteria for the state secrets privilege.

Regarding the question of informants, we believe that, where the identities (or information that would disclose the identities) of national security informants has been properly classified, the state secrets privilege may be asserted with regard to such information. For example, in *Pan American World Airways, Inc.* v. *Aetna Casualty and Surety Co.*, 368 F. Supp. 1098, 1140-41 (S.D.N.Y. 1973), *aff'd* 505 F. (2d) 989 (2d Cir. 1974), the court upheld a claim of privilege based on the Central Intelligence Agency's (CIA) representation that the disclosure of the identity of its sources could result in a loss of information to the CIA and in serious physical danger to the sources. Similarly, in *United States* v. *American Telephone and Telegraph Co.*, 419 F. Supp. 454, 457 (D.D.C. 1976), *remanded for further efforts at negotiation,* 551 F. (2d) 384, 388 (D.C.

---

[1] Section 6-104 of the Executive order defines the term "national security" as the "national defense and foreign relations of the United States."

Cir. 1976), *remanded for further efforts at accommodation,* 567 F. (2d) 121 (D.C. Cir. 1977), the Government was concerned whether disclosing the identity of our counteragents would diminish their usefulness or even endanger their lives. This was only one of several concerns advanced by the Government. While neither the district court nor the circuit court independently evaluated these concerns, both courts concluded that legitimate national security considerations were at stake in the Executive's withholding of information from the Congress, thus indicating that the identity of informants may be a legitimate national security concern.

Although properly classified information is generally entitled to the protection of the privilege for state secrets, the fact that information is properly classified does not, in itself, require the assertion of the state secrets privilege. Rather, the Department's decision to assert the privilege is to be made on a case-by-case basis, taking into account not only the sensitivity of the information, but also factors not considered in the classification process such as the public interest in releasing the information in the context of particular litigation and the effect which invoking the privilege would have on its long-term viability. *Cf.* Executive Order No. 12065, §3–303 (recognizing that the need to protect properly classified information may be outweighed by the public interest in disclosure of the information). Moreover, the courts have insisted that the privilege must be formally claimed by the head of the department that has control over the information, after actual personal consideration by that official. *United States* v. *Reynolds, supra,* at 7–8; *Jabara* v. *Kelley, supra,* at 487–88; *Kinoy* v. *Mitchell, supra,* at 8. A representation that the information is classified is not sufficient; the courts also require representations that the criteria of the state secrets privilege are met and require sufficient additional information in order to make an informed judgment as to the merits of the claim. *See, Kinoy* v. *Mitchell, supra,* at 9–10; 8 Wigmore, *Evidence* § 2379, at 810 (McNaughton rev. 1961) ("the government must make a showing supporting its plea of privilege"). A proposed assertion of the state secrets privilege would normally thus cause two different sorts of review of the information at issue. First, reviewing the information and preparing the requisite representations should entail a reevaluation of the sensitivity of the information within the government and an assessment of the propriety of invoking the privilege. *See* 2 Weinstein *Evidence* § 509[04], at 509-3 (1977). Second, before it may accept the claims, the court is also obliged to satisfy itself that the invoking of the privilege is appropriate. *United States* v. *Reynolds, supra,* at 9–11; *Jabara* v. *Kelley, supra,* at 484, 491.

Your second question addresses the issue whether the state secrets privilege may be asserted concurrently with other claims of privilege for the same information. Although we have been unable to find any court decision on point,[2] we see no reason why two separate privileges may not

---

[2] Several decisions, however, have recognized that the concerns underlying different privileges may arise with respect to the same information or document. *Machin* v. *Zuckert,* 316 F. (2d) 336, 339 (D.C. Cir. 1963); *Jabara* v. *Kelley,* 62 F.R.D. 424, 425, 431 (E.D. Mich. 1974).

be asserted with respect to the same information. The foundation for all of the Government's privileges is, ultimately, the public interest. In our view, the public interest could only be properly served if, in a situation where the concerns underlying a particular piece of information relate to two or more of the Government's privileges, all of those concerns were addressed before a decision is made to release the information. The Government should thus be able to assert all available privileges in order that a court may make an informed judgment whether the public interest would actually be served by disclosure.

This conclusion is supported by other aspects of the law. The general policy of the law is to allow for alternate or multiple claims or defenses in civil litigation. *See* Fed. R. Civ. Proc. 8(e). In fact, in the analogous context of Freedom of Information litigation, the Government frequently claims that information is exempt from disclosure under two or more exemptions (which are themselves often founded on common-law privileges). *See, e.g., Weissman* v. *CIA*, 565 F. (2d) 692 (D.C. Cir. 1977). We thus believe that, if the state secrets privilege and another privilege are both legitimately applicable, the Government as a legal matter may assert each of them at the same time. Whether it should actually do so is, of course, a judgment that must be made in each case by the attorneys in charge of the case.[3]

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[3] This determination might be based on both the relative weight of the privileges and the ease in which they may be asserted. For example, even though the informer's privilege is a qualified one, *see, Roviaro* v. *United States*, 353 U.S. 53 (1957), and may thus afford the informant's identity less protection than the state secrets privilege, it might also be less burdensome to assert. While there is some contrary authority, it appears that the privilege need not be asserted by the head of the agency, but may be advanced by any appropriate representative of the Government. *See, Kinoy* v. *Mitchell, supra*, at 11 n. 36; McCormack, *Evidence* § 111, at 237 (1972). *Cf., Bocchicchio* v. *Curtiss Publishing Co.*, 203 F. Supp. 403, 406 n. 7 (E.D. Pa. 1962). *But see, Mitchell* v. *Bass*, 252 F. (2d) 513, 516 (8th Cir. 1958); *Fowler* v. *Wirtz*, 34 F.R.D. 20, 23 (S.D. Fla. 1963).